Guy TANTIMONICO, Jr.

v.

ALLENDALE MUTUAL INSURANCE COMPANY.

John McPHILLIPS, Jr.

v.

ALLENDALE MUTUAL INSURANCE COMPANY et al.

92–484–Appeal.

Supreme Court of Rhode Island.

Feb. 25, 1994.

Frederick Costello, Lynch, Costello & Friel, Warwick, Peter Mathieu, Dennis Baluch, Baluch, Mahoney & Gianfrancesco, Providence, for plaintiffs.

John Kershaw, Rice, Dolan & Kershaw, Jeffrey Gladstone, Partridge, Snow & Hahn, Providence, for defendant.

OPINION

SHEA, Justice.

These consolidated cases are before the Supreme Court on the appeals of the plaintiffs from Superior Court orders granting the defendant's motions for summary judgment. For the reasons that follow we affirm.

The facts of this case are not in dispute. On May 5, 1985, Guy Tantimonico, Jr., and John McPhillips, Jr. (plaintiffs), were riding motorcycles on a piece of undeveloped property owned by Allendale Mutual Insurance Company (defendant) located near its corporate headquarters in Johnston, Rhode Island. While independently riding their motorcycles on the property, plaintiffs, both in their twenties, collided head on with each other. Neither plaintiff can recall the specifics of the accident, but both Tantimonico and McPhillips suffered severe injuries that required extensive hospitalization.

At the conclusion of the hearing on defendant's motions for summary judgment, the trial justice stated that he could find no legal duty that would support the actions against defendant and, that without a legal duty, no material facts were to be found because the question of law was dispositive of the entire matters.

The plaintiffs argue on appeal that in light of this court's holding in *Mariorenzi v. DiPonte, Inc.*, 114 R.I. 294, 333 A.2d 127 (1975), the trial justice erred in granting defendant's motions for summary judgment. In *Mariorenzi* a five-year-old trespasser at a construc-

tion site accidentally drowned in an excavation that had filled with water. On appeal, this court abolished the common-law distinctions between the duties owed to licensees, invitees, and trespassers and substituted the tort test of reasonableness. We now take this opportunity to depart from the holding in *Mariorenzi* as it pertains to trespassers.

Traditionally at common law the possessor of land owed a trespasser

"no duty to discover, remedy, or warn of dangerous natural conditions. Perhaps if the possessor sees a trespasser about to encounter extreme danger from such a source, which is known to the possessor and perceptibly *not* known to the trespasser, there may be a duty to warn (as by shouting). That is about as far as the bystander's duty to a highway traveler would traditionally go, if indeed it would go that far." 4 Harper, James & Gray, *The Law of Torts* § 27.3 at 139 (2d ed. 1986). Rhode Island followed the common law status categories, and in *Previte v. Wanskuck Co.*, 80 R.I. 1, 3, 90 A.2d 769, 770 (1952), this court stated that "in the ordinary case under the established law in this state no duty is owed a trespasser by a landowner except to refrain from injuring him wantonly or wilfully after discovering his peril."

Many jurisdictions carved out exceptions to the common-law status categories, and in 1957 Great Britain's Parliament enacted a statute abolishing the distinction between licensees and invitees. *See* Occupier's Liability Act, 5 & 6 Eliz. 2, c. 31 (1957).

In *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959), the Supreme Court expressed its dissatisfaction with the common-law distinctions between licensees and invitees when it refused to extend them to maritime law. The Court stated:

"The distinctions which the common law draws between licensee and invitee were inherited from a culture deeply rooted to the land, a culture which traced many of its standards to a heritage of feudalism. In an effort to do justice in an industrialized urban society, with its complex economic and individual relationships, modern common-law courts have found it neces-

sary to formulate increasingly subtle verbal refinements, to create subclassifications among traditional common-law categories, and to delineate fine gradations in the standards of care which the landowner owes to each. Yet even within a single jurisdiction, the classifications and subclassifications bred by the common law have produced confusion and conflict. As new distinctions have been spawned, older ones have become obscured. Through this semantic morass the common law has moved, unevenly and with hesitation, towards 'imposing on owners and occupiers a single duty of reasonable care in all the circumstances.'" *Id.* at 630–31, 79 S.Ct. at 410, 3 L.Ed.2d at 554–55.

The Court went on to hold that "the owner of a ship in navigable waters owes to all who are on board for purposes not inimical to his legitimate interests the duty of exercising reasonable care under the circumstances of each case." *Id.* at 632, 79 S.Ct. at 410, 3 L.Ed.2d at 555. That holding would in all likelihood not include a duty to a trespasser.

It was not until the Supreme Court of California issued its opinion in *Rowland v. Christian*, 69 Cal.2d 108, 443 P.2d 561, 70 Cal.Rptr. 97 (1968), that the common-law categories were judicially abrogated in a United States jurisdiction.

The California court stated:

"[T]o focus upon the status of the injured party as a trespasser, licensee, or invitee in order to determine the question whether the landowner has a duty of care, is contrary to our modern social mores and humanitarian values. The common law rules obscure rather than illuminate the proper considerations which should govern determination of the question of duty."

"It bears repetition that the basic policy of this state set forth by the Legislature in section 1714 of the Civil Code is that everyone is responsible for an injury caused to another by his want of ordinary care or skill in the management of his property. The factors which may in particular cases warrant departure from this fundamental principle do not warrant the wholesale immunities resulting from the common law

classifications, and we are satisfied that continued adherence to the common law distinctions can only lead to injustice or, if we are to avoid injustice, further fictions with the resulting complexity and confusion. We decline to follow and perpetrate such rigid classifications." *Id.* at 118–19, 443 P.2d at 568, 70 Cal.Rptr. at 104.

In the wake of *Rowland,* this court in *Mariorenzi* cited opinions from a limited number of jurisdictions that purportedly followed the California lead by totally abrogating the common-law status categories. *See Smith v. Arbaugh's Restaurant, Inc.,* 469 F.2d 97 (D.C.Cir.1972), *cert. denied,* 412 U.S. 939, 93 S.Ct. 2774, 37 L.Ed.2d 399 (1973); *Webb v. City of Sitka,* 561 P.2d 731 (Alaska 1977); *Mile High Fence Co. v. Radovich,* 175 Colo. 537, 489 P.2d 308 (1971); *Pickard v. City and County of Honolulu,* 51 Hawaii 134, 452 P.2d 445 (1969); *Cates v. Beauregard Electric Cooperative, Inc.,* 328 So.2d 367 (La. 1976); *Ouellette v. Blanchard,* 116 N.H. 552, 364 A.2d 631 (1976); *Basso v. Miller,* 40 N.Y.2d 233, 352 N.E.2d 868, 386 N.Y.S.2d 564 (1976). As Justice Joslin pointed out in his dissent, however, none of these cases involved an injury to a trespasser.

"In *Rowland v. Christian,* 69 Cal.2d 108, 443 P.2d 561, 70 Cal.Rptr. 97 (1968), a tenant's social guest was injured while using a faulty bathroom fixture, which defect had been reported to the landlord-defendant; in *Pickard v. City & County of Honolulu,* 51 Hawaii 134, 452 P.2d 445 (1969), a licensee was injured when he unexpectedly fell through a hole in the floor in the restroom of the defendant's courthouse; in *Mile High Fence Co. v. Radovich,* 175 Colo. 537, 489 P.2d 308 (1971), an on-duty police officer, who the defendant argued was a licensee, sustained injury when he walked down an alley in the course of his work and stepped into an unprotected fence hole dug by the defendant; in *Smith v. Arbaugh's Restaurant, Inc.,* 469 F.2d 97 (D.C.Cir.1972), a building inspector was injured while examining the barbecue kitchen in the defendant's restaurant. *See also Sargent v. Ross,* 113 N.H. 388, 308 A.2d 528 (1973), where the plaintiff-tenant's 4–year–old daughter lost her life when she fell from the defendant-land-lord's outdoor stairway." *Mariorenzi,* 114 R.I. at 309 n. 2, 333 A.2d at 134 n. 2.

Other jurisdictions repudiated the distinctions between licensee and invitee but retained limited-duty rules for trespassers. *Poulin v. Colby College,* 402 A.2d 846 (Me. 1979); *Mounsey v. Ellard,* 363 Mass. 693, 297 N.E.2d 43 (1973); *Peterson v. Balach,* 294 Minn. 161, 199 N.W.2d 639 (1972); *O'Leary v. Coenen,* 251 N.W.2d 746 (N.D. 1977); *Antoniewicz v. Reszcynski,* 70 Wis.2d 836, 236 N.W.2d 1 (1975).

Although repudiation or modification of the common-law status categories took effect in the above jurisdictions, by the late seventies an increasing number of courts had specifically rejected *Rowland. See Whaley v. Lawing,* 352 So.2d 1090 (Ala.1977); *Wood v. Camp,* 284 So.2d 691 (Fla.1973); *Gerchberg v. Loney,* 223 Kan. 446, 576 P.2d 593 (1978); *Sherman v. Suburban Trust Co.,* 282 Md. 238, 384 A.2d 76 (1978); *Sutherland v. Saint Francis Hospital, Inc.,* 595 P.2d 780 (Okla. 1979); *Buchholz v. Steitz,* 463 S.W.2d 451 (Tex.Civ.App.1971); *Tjas v. Proctor,* 591 P.2d 438 (Utah 1979). Others had postponed considering the repudiation of the categories, and still others simply reaffirmed the traditional classifications. *See* Page, *The Law of Premises Liability* at 139–40 (2d ed. 1988).

In *Mariorenzi* this court stated that it was giving a "final but fitting interment" to all three common-law categories. 114 R.I. at 307, 333 A.2d at 133. It also stated:

"The time has come to extricate ourselves from a semantical quagmire that had its beginning in ancient and misleading phraseology. * * * The judiciary gave birth to the invitee, licensee, trespasser trio and the judiciary can lay this triptych to rest. Accordingly, we now give a final but fitting interment to the common-law categories of invitee, licensee, and trespasser as well as their extensions, exceptions, and extrapolations.

"As we assign the trichotomy to the historical past, we substitute in its place the basic tort test of reasonableness. Hereafter, the common-law status of an entrant onto the land of another will no longer be determinative of the degree of

care owed by the owner, but rather the question to be resolved will be whether the owner has used reasonable care for the safety of all persons reasonably expected to be upon his premises." *Id.* at 306–07, 333 A.2d at 133.

Justice Joslin, however, dissented, stating:

"[T]he majority have made, in effect, a value judgment that it is more acceptable to our society that the risk of loss due to foreseeable injury sustained by a trespasser while on another's land—in any event a slight and readily insurable risk—be shifted from him to the land possessor.

"If that judgment were premised more upon legal analysis and persuasive precedent and less upon presumed public acceptability, I would abide by my concurring opinion in *Henry v. J.W. Eshelman & Sons,* 99 R.I. 518, 527, 209 A.2d 46, 51 (1965). There I said that '[w]hile a deferral to the Legislature in the initiation of changes in matters affecting public policy may often be appropriate, it is not required where the concept demanding change is judicial in its origins.' But the majority's decision is not so premised. Instead, it rests purely on what in their judgment is a socially desirable policy." 114 R.I. at 309–10, 333 A.2d at 134–35.

At the time the *Mariorenzi* accident occurred, there was no statutory or case law in this state that addressed the special concerns for the infant trespasser. The so-called attractive-nuisance or trespassing-child doctrine was not recognized in this state until *Haddad v. First National Stores, Inc.,* 109 R.I. 59, 280 A.2d 93 (1971), in which this court adopted the standard set out in the Restatement (Second) *Torts* § 339 (1965). In *Haddad* the adoption was given strictly prospective application.

The case at bar is the incarnation of the worst fears of many opponents to the movement away from common-law status categories. In *Ouellette v. Blanchard,* 116 N.H. 552, 364 A.2d 631 (1976), the Supreme Court of New Hampshire abolished the distinction among invitees, licensees, and trespassers. Justice Grimes of that court, in a vigorous dissent, wrote:

"I fear that the elimination of the trespasser distinction in the determination of the landowner's duty of care will result in unreasonable, unrealistic and unjust consequences. Every owner, lessee, and occupant of land will be faced with increased exposure to liability. If there are no good reasons for drawing a distinction between licensees and invitees, trespassers are in a fundamentally different position from those persons whom the landowner has expressly or by implication invited onto his property." *Id.* at 560, 364 A.2d at 636.

Justice Grimes continued:

"One difficulty I have with the court's decision is that it casts aside a whole body of law, built up over the years, which clearly defines the rights and obligations of the property owner on the basis of the relationship he has with those who came upon his land. It is fundamental in tort law that the duty is created by the relationship. Under this law, the owner knows in advance what his duty is. In place of this well-settled and reasonable set of rules, the court now substitutes a single vague duty of reasonable care, under which the property owner acts at his peril with no standard by which he can judge his obligations in advance. The kinds of trespassers are many. The only thing they have in common is that they have no right on the land. And yet it is to be determined after the event what the owner's duty was before the event with regard to each of these various kinds of trespassers who enter upon his land.

"Protesters who invade a company's property and are injured because of some condition of the premises will be able to have a jury decide after the event what duty the company owed to them. A burglar who is injured while scaling a fence in a high crime area where burglars are not unexpected would be able to put the owner to the risk of a jury decision on the question if he had used reasonable care toward the burglar. Such claims should of course be dismissed at the outset as they would be under our preexisting law." *Id.* at 561–62, 364 A.2d at 637.

Similarly, the Supreme Judicial Court of Massachusetts had stated in *Mounsey v. Ellard*, 363 Mass. 693, 297 N.E.2d 43 (1973):

"We feel that there is [a] significant difference in the legal status of one who trespasses on another's land as opposed to one who is on the land under some color of right—such as a licensee or invitee. For this reason, among others, we do not believe they should be placed in the same legal category. For example, one who jumps over a six foot fence to make use of his neighbor's swimming pool in his absence does not logically belong in the same legal classification as a licensee or invitee." *Id.* at 708 n. 7, 297 N.E.2d at 51–52 n. 7.

The more recent trend in premises-liability law is to uphold the traditional common-law categories. In *Kirschner v. Louisville Gas & Electric Co.*, 743 S.W.2d 840 (Ky.1988), the Supreme Court of Kentucky stated:

"Historically, all tort law has been based on the theory of whether a defendant violated a duty owed to the injured party. There is nothing illogical or unfair in requiring violation of a duty before liability can be imposed, and we reject Kirschner's assertion that we should abolish the classifications of trespasser, licensee, and invitee." *Id.* at 844.

In denying relief to the appellants for injuries to their two-year-old son stemming from oxygen deprivation suffered after falling into a pond while trespassing on the appellee's property, the Supreme Court of Oklahoma declared:

"Human nature being what it is, our natural tendency is to want to help ease the suffering of this small child and his parents. However, our classification principles have evolved over many years as a means of weighing the individual rights of a property owner against the rights of the public at large. As judges, we are accountable for interpreting the law according to precedent and sound public policy. We are not afforded the luxury of indulging in sympathetic tendencies at another's expense. At this time, we do not find support to depart from the common law principles governing the duty owed by a landowner to one upon his property without express or implied permission." *Lohrenz v. Lane*, 787 P.2d 1274, 1277 (Okla. 1990).

The Oklahoma Court continued:

"This was a tragic accident and Appellants have suffered a bitter loss in the well-being of their child. However, it *was* an accident. Just as we can not fault parents, in preventing a small active child from briefly escaping supervision, neither can we impose liability on an adjoining landowner whose property did no more than furnish a condition, open and obvious and without hidden danger, which made the injury possible." *Id.* at 1278–79.

Other recent cases that have upheld the common-law status categories are: *Nicoletti v. Westcor, Inc.*, 131 Ariz. 140, 639 P.2d 330 (1982); *Murphy v. Baltimore Gas & Elec. Co.*, 290 Md. 186, 428 A.2d 459 (1981); *Buchanan v. Prickett & Son, Inc.*, 203 Neb. 684, 279 N.W.2d 855 (1979); *Caroff v. Liberty Lumber Co.*, 146 N.J.Super 353, 369 A.2d 983 (1977). *See also* Annot. *Modern Status of Rules Conditioning Landowner's Liability Upon Status of Injured Party as Invitee, Licensee, or Trespasser*, 22 A.L.R. 4th 294, 310–314 (1983).

It is interesting to note that in 1978, three years after *Mariorenzi* was decided, the General Assembly enacted chapter 6 of title 32 of the General Laws. P.L.1978, ch. 375, § 1 (codified at G.L.1956 (1982 Reenactment) §§ 32–6–1 through 32–6–7). In general that statute provides that a landowner who either directly or indirectly invites or permits without charge any person to use the property for recreational purposes does not thereby confer upon such person the legal status of invitee or licensee to whom a duty of care is owed. Section 32–6–3. As pointed out in the amicus brief, the obvious intention of the Legislature was to treat those who use private property for recreational purposes as though they were trespassers. This indicates that to accomplish the objective of opening up land to meet the growing public demand for recreational space, the Legislature resurrected the landowner's common-law immunity as to trespassers prior to *Mariorenzi*. The Legislature appears to have made a judgment that the social benefits of

resurrecting the common-law classification at least for this purpose outweighed the costs to recreational users.

The Legislature also addressed Justice Grimes' fear that "a burglar who was injured would be able to put the landowner to the risk of a jury decision" by enacting G.L.1956 (1985 Reenactment) § 9–1–46, as amended by P.L.1986, ch. 473 § 1, entitled "Affirmative defense of trespasser's intent to commit a crime."[1]  Section 9–1–46 provides:

> "The owner or person legally entitled to possession of any land or building shall be entitled to plead as an affirmative defense that the injured person was trespassing with the intent to commit a felony which upon proof thereof shall prohibit said trespasser from recovering for personal injuries sustained while upon said land or building, unless those injuries were inflicted by unreasonable force by the owner or person legally entitled to possession of said land or building."

We concede that neither of these statutes applies literally to the facts before us.  However, to allow plaintiffs to maintain these actions would make landowners liable to trespassers injured while using their land for recreational use without permission, yet persons who use the land for recreation with the landowner's permission would be treated as trespassers not entitled to recovery.  At the same time actual trespassers, who use the land for recreational purposes without the owner's consent, would be treated as entitled to the same degree of care as invitees.

In the case at bar we are presented with two adults who chose to ride their motorcycles on defendant's property without permission.  Clearly plaintiffs were trespassers.  They entered the land without permission solely for the purpose of riding their motorcycles.  As previously noted, the memory loss caused by the severity of the injuries they sustained prevents either plaintiff from recalling the specifics of the accident.  However, from the physical facts it would appear that they collided head-on on a circular trail.  It would not be unreasonable to conclude from the known facts and the nature of their injuries that plaintiffs were operating their vehicles in a grossly negligent manner, which resulted in dire consequences for them.  It is almost impossible to entertain the notion that anyone other than plaintiffs themselves is responsible for their injuries.  To hold the property owner liable for injuries brought about by a plaintiff's negligent behavior would be patently ludicrous.

The plaintiffs claim that we reaffirmed *Mariorenzi* in *Banks v. Bowen's Landing Corp.*, 522 A.2d 1222 (R.I.1987).  Without question we cited and distinguished *Mariorenzi* in holding that the owner of Bowen's Wharf Company owed no duty to an inebriated patron of a nearby drinking establishment to prevent him from leaping off a ramp into Newport Harbor.  *Id.* at 1226.  The complex application of factors that we borrowed from the California Court of Appeals in *Thompson v. County of Alameda*, 27 Cal.3d 741, 750, 614 P.2d 728, 732–33, 167 Cal.Rptr. 70, 74–75 (1980), necessary to distinguish *Mariorenzi* is illustrative of the extreme difficulty encountered in determining the liability of an owner or occupier of land or structures in relation to a trespasser.  The simplicity of the common-law rule with respect to trespassers would eliminate the mental gymnastics required by *Banks*, and by the present case, if the *Mariorenzi* rule were to be retained.

Property owners have a basic right to be free from liability to those who engage in self-destructive activity on their premises without permission.  The common-law rule developed over the centuries accomplishes this purpose clearly and without equivocation.

We conclude, therefore, that this landowner owed these plaintiffs no duty save to refrain from willful or wanton injury.  To hold the defendant accountable would be tan-

---

1. It is important to recognize that the plaintiff in *Mariorenzi v. DiPonte, Inc.*, 114 R.I. 294, 333 A.2d 127 (1975) would not be precluded from a remedy by this opinion.  *Haddad v. First National Stores, Inc.*, 109 R.I. 59, 280 A.2d 93 (1971) made available recovery under the attractive nuisance or the trespassing-child doctrine.  As noted earlier this doctrine was unavailable for the estate of Thomas Mariorenzi because his accidental death preceded *Haddad* by approximately ten years.

**1062**

tamount to imposing strict liability upon every landowner in this jurisdiction. Consequently we depart from *Mariorenzi* as it applies to trespassers. We decline to comment on the other aspects of the holding in *Mariorenzi* as no issues involving invitees or licensees are before us.

For these reasons the plaintiffs' appeals are denied and dismissed, the judgments appealed from are affirmed, and the papers of the case are remanded to the Superior Court.