DECISION
Before the Court is Defendant, Narragansett Electric Company's R.C.P. 56 Motion for Summary Judgment.
Facts
The record reveals the following undisputed facts. On May 11, 1989, Francis T. King, III (King), Paul Zahn (Zahn), and Jeffrey V. Jones (Jones) entered upon land owned by the Narragansett Electric Company (NEC). The three men went to the property to view an osprey nest located on top of a utility pole. In order to gain access to NEC's property, the three men drove down a private road, Narragansett Way, and passed "No Trespassing" signs. They also drove around a gate in order to gain access to the field where the utility pole was located. None of the men obtained permission from NEC to be on the property, and Jones stated in his deposition that he knew he was trespassing.
King, Zahn, and Jones approached the utility pole where the nest was located. Below the nest were two cross-arms and a number of electrical distribution wires. King began to climb the pole despite warnings from Zahn and Jones that it was a bad idea. As there were no climbing rungs on this pole, King was forced to shimmy up the pole. When King approached the top of the pole, he stated that the wires were making a humming noise. Again Zahn and Jones told him to come down, but he refused. Several minutes later, King yelled that a car was coming, causing Zahn and Jones to run back toward their vehicle. When they turned around, they saw that King had come in contact with a 12.5 KV distribution wire. King then fell to the ground. Zahn and Jones brought King to the Westerly Hospital where he was pronounced dead approximately one hour later.
King's widow, Karie M. King (plaintiff), brought this wrongful death action against NEC alleging that it was negligent in its maintenance of the property. NEC now moves for summary judgment on the ground that it owed no duty to King due to his status as a trespasser.
Standard of Review
Summary judgment is a means of curtailing litigation when the court finds that no genuine issue of material fact exists. TrendPrecious Metals v. Sammartino, 577 A.2d 986, 988 (R.I. 1990). In making its decision, the court recognizes that summary judgment is a drastic remedy that should be cautiously applied. Rustigianv. Celona, 478 A.2d 187, 189 (R.I. 1984). The court must examine the pleadings, affidavits, admissions, answers to interrogatories and other documents in the light most favorable to the party opposing the motion. O'Hara v. John Hancock Mutual LifeInsurance Co., 574 A.2d 135, 136 (R.I. 1990). Nevertheless, a litigant who seeks to oppose a motion for summary judgment has the burden of showing the existence of a disputed issue of material fact and cannot rest upon mere allegations in the pleadings. Industrial National Bank v. Patriarca, 502 A.2d 336, 338 (R.I. 1985). The trial justice may search for the existence of material issues of fact, but may not determine them.McPhillips v. Zayre Corp., 582 A.2d 747, 749 (R.I. 1990). In addition, the trial justice may not assess the weight or credibility of the evidence. Id. (citing Doyle v. State,122 R.I. 590, 411 A.2d 907 (1980)).
Plaintiff alleges that NEC was negligent in its maintenance of the premises. In order for a party to be liable for negligence, the party must owe the plaintiff a duty. Rodriguesv. Miriam Hospital, 623 A.2d 456, 461 (R.I. 1993); Ryan v.State Department of Transportation, 420 A.2d 841, 842 (R.I. 1980). Whether a duty exists in a particular situation is a question of law for the court to decide. Ferreira v. Strack,636 A.2d 682, 685 (R.I. 1994) (citing D'Ambra v. United States,114 R.I. 643, 649, 338 A.2d 524, 527 (1975)). If no duty exists, the trier of fact has nothing to consider and a motion for summary judgment must be granted. Barratt v. Burlingham,492 A.2d 1219, 1220 (R.I. 1985).
NEC contends that, in light of the recent decision ofTantimonico v. Allendale Mutual Insurance Co., 637 A.2d 1056
(R.I. 1994), it owed no duty to King, Jones and Zahn as trespassers. In Tantimonico, the plaintiffs, two motorcyclists, were riding motorcycles on an undeveloped piece of property owned by the defendant insurance company. Id. at 1056. The plaintiffs collided head on with each other, each sustaining serious injuries requiring an extensive hospital stay. Id. The trial justice granted the defendant's motion for summary judgment on the ground that he could find no legal duty owed by the defendant to the plaintiffs which would sustain the plaintiffs' action.Id. The plaintiffs appealed this judgment in reliance onMariorenzi v. DiPrete, Inc., 114 R.I. 294, 333 A.2d 127 (1975).Id.
In Mariorenzi, a five year old drowned in an excavation that had filled with water at a construction site. Mariorenzi,
114 R.I. at 297-98, 333 A.2d at 128-29. The Supreme Court abolished the common-law distinctions between the duties owned to invitees, licensees and trespassers. Id. at 307, 333 A.2d at 133. Instead, the Court adopted the tort test of whether the landowner has used reasonable care for the safety of all persons reasonably expected to be on his premises. Id.
The Tantimonico Court reversed Mariorenzi as it pertained to trespassers. Tantimonico, 637 A.2d at 1057. Rhode Island returned to the common-law rule that the landowner must simply refrain from willful or wanton conduct after discovering a trespasser in peril. Id. (citing Previte v. Wanskuck Co.,80 R.I. 1, 3, 90 A.2d 769, 770 (1952)). The Court recognized that the recent trend in premises liability cases was to uphold the common law classifications of invitee, licensee, and trespasser,Id. at 1060. The Court stated that landowners had the right to be free from liability when individuals engaged in self-destructive activity on their property without permission.Id. at 1061. Recognizing that the present law effectively resulted in strict liability on landowners, the Court held that no duty is owed to trespassers except to refrain from willful and wanton conduct. Id. at 1061-1062. The Court reaffirmed its position when it denied the plaintiffs' motion for reargument.Tantimonico v. Allendale Mutual Insurance, 642 A.2d 1169 (R.I. 1994).
The facts of the present case are analogous to Tantimonico.
King, Zahn, and Jones were on NEC's property without permission. Jones even admitted in his deposition that he knew he was trespassing. The utility pole that King climbed had no climbing rungs to encourage people to climb the pole. Even after hearing the wires humming, an indication that electricity was flowing through them, King kept climbing the pole. Certainly, this can be classified as self-destructive activity. King was 22 years old at the time of his death. Clearly, a person of this age knows the dangers of live electrical wires. It is unrealistic for the plaintiff to suggest that because NEC knew of the existence of the nest, it should have expected people to climb the pole to view it. Certainly, NEC should not be charged with the knowledge that individuals trespassing on clearly marked private property would climb a utility pole in complete disregard of the obvious dangers of live electrical wires.
The plaintiff argues that under the list of factors in Banksv. Bowen's Landing Corp., 522 A.2d 1222 (R.I. 1987), the court should find that a duty exists. In Banks, the Court, recognizing that there is no clear-cut test in determining the existence of a duty, delineated five factors to be considered by the trial justice:
 1) foreseeability of harm to the plaintiff;
 2) the degree of certainty that the plaintiff suffered an injury;
 3) the closeness of the connection between the defendant's conduct and the injury suffered;
 4) the policy of prevention of future harm; and
 5) the extent of the burden to defendants and the consequences to the community for imposing a duty to exercise care with resulting liability for breach.
Id. at 1225 (citing Thompson v. County of Alameda, 27 Cal.3d 741, 750, 614 P.2d 728, 732-33, 167 Cal.Rptr. 70, 74-75 (1980)). It is unnecessary to consider those factors in the present case since Tantimonico clearly states that when an individual is trespassing on private property, the landowner owes no duty except to refrain from willful and wanton conduct. Surely, theTantimonico Court considered many of these factors in reaching its conclusion. For example, one reason for the court's decision was the impossible burden landowners would face if they could be held liable for all acts of trespassers. Tantimonico, 637 A.2d at 1061-1062.
Last Friday, the Supreme Court issued its second decision inBanks v. Bowens Landing Corporation, No. 93-324-A, decided January 20, 1995. At the conclusion of the close of evidence, inBowens, counsel failed to renew its motion for a directed verdict on the issue of common-law negligence. The Supreme Court held that Bowens Landing forfeited its right to argue whether or not there exists a common-law right of action by one who voluntarily ingests alcohol in a bar, and then voluntarily dives into Newport Harbor while he is intoxicated and injures himself. The Supreme Court specifically reserved a decision as to whether or not there is a common-law right of action in negligence for that kind of an injury. While that is not directly on point, it is certainly persuasive that the area of negligence by trespassers, business invitees, or persons who act in complete disregard for the obvious dangers to themselves can bring an action alleging negligence on the part of the landowner or the business owner.
The plaintiff's reliance on Rott v. Blackstone Valley Gas Electric Co., 82 R.I. 111, 106 A.2d 251 (1954), is also misplaced. In Rott, a construction worker was killed when the boom of his crane came in contact with the defendant's high tension wires. Id. at 114, 106 A.2d at 253. During the previous several months, the boom had come in contact with the wires, but, knowing of the danger to the construction workers, the defendant took no action to remove it. Id. The plaintiffs claimed first, that the defendant had a duty to turn off the electricity, and second, that it had a duty to insulate the wires.
The court first held that the defendant would only have a duty to turn off the electricity in a state of extreme emergency when "regardless of all considerations except the protection of human life, it would have become the defendant's duty to suspend transmission of electricity through its wires." Id. at 115, 106 A.2d at 254. The court found that no such extreme emergency existed in this case. Id.
The court then addressed the duty to insulate the wires, and first found that there is no absolute duty to insulate. Id. at 116, 106 A.2d at 255. The court state that this duty, when it exists, runs not only to individuals with contractual relations with the electric company, but also to "those persons injured while lawfully on the public highway over which the company is transmitting its electricity." Id. at 117-18, 106 A.2d at 255 (citations omitted) (emphasis added).
This case is distinguishable from the present case in two important respects. First, the plaintiff in the present case has not alleged a failure to insulate the high tension wires. Second, King was not lawfully on NEC's property; he was trespassing on private property.
Finally, plaintiff opposes the motion for summary judgment in reliance upon the Maryland case, Potomac Electric v. Smith,558 A.2d 768 (Md. App. 1989). In this case, a fifteen year old girl was electrocuted when she came in contact with a downed electrical line owned by the defendant electric company. Id. at 771. The land where the accident occurred was not owned by the company; however, they had an easement over the pathway which gave them the right to exclude people from using the pathway.Id. The electric company chose not to take any measures to prohibit access to the land. Id. There were no signs prohibiting the use of the pathway, nor were there gates or fences. Id. at 771-772.
The court, relying on the Restatement (Second) of Torts and several cases from other jurisdictions, delineated five factors that must exist for a power company to be subject to liability for bodily harm to a trespasser:
 1) the company knows, or should know, that trespassers constantly intrude upon a limited area of land;
 2) the company maintains a highly dangerous condition in that area;
 3) the dangerous condition is likely to cause death or serious bodily harm to such trespassers;
 4) the condition is of such a nature that the company has reason to believe that such trespassers will not discover it; and
 5) the company has failed to exercise reasonable care to warn trespassers of the condition and the risks involved.
Id. at 775 (citations omitted). In all of the cases cited by the court, the injury was caused by a downed or sagging power line, or a power line that was too close to a wall or pathway.
The conditions in Potomac Electric do not exist in the present case. First, NEC did take steps to prevent access to this area. No trespassing signs were posted, and although they had been vandalized, they were not illegible as suggested by the plaintiff. There were also gates in place to exclude trespassers. Second, there is no allegation that any of the electrical lines were downed or even sagging. The pole did not even have climbing rungs which would facilitate climbing the pole to view the nest. Third, the fourth factor mentioned in Potomac Electric is clearly not met in this case. The danger was not hidden. Zahn and Jones both stated that they did not climb the pole because they knew it was dangerous. King commented that the wires were humming, but still continued to climb the pole, ignoring the warnings of his friends. The danger was an obvious one, about which NEC had no duty to warn. Reek v. Lutz, 90 R.I. 340, 344,158 A.2d 145, 147 (1960).
Conclusion
The Court has carefully reviewed the arguments of counsel, the memoranda and affidavits submitted in support of those arguments, as well as the trial discovery responses contained in the case file. After due consideration, the court finds that no disputed issues of material fact exist, and that the defendant is entitled to judgment as a matter of law. The Court is satisfied that, however tragic these events may be, this case falls within the parameters of Tantimonico. As a trespasser, King was owed no duty by NEC except the duty to refrain from willful and wanton conduct. Accordingly, NEC's motion for summary judgment is hereby granted.
Counsel shall submit an appropriate order for entry.