Donald BENNETT

v.

Stephen NAPOLITANO, in his capacity as Treasurer of the City of Providence.

No. 98–481–Appeal.

Supreme Court of Rhode Island.

Feb. 22, 2000.

Michelle L. Felix, Stephen A. Rodio, Providence, for plaintiff.

Richard G. Riendeau, Alan E. Kornstein, Providence, for defendant.

Present WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

LEDERBERG, Justice.

What duty, if any, does a municipality owe to an individual who walks in a city park after it has closed for the night? The plaintiff, Donald Bennett, was injured in the early morning when a tree limb fell on him within Roger Williams Park (park) in Providence, Rhode Island. In response to the plaintiff's complaint against City of Providence (city or Providence), the city filed a motion for summary judgment that was granted, and the plaintiff appealed. For the reasons set forth below, we affirm.

### Facts and Procedural History

Upon returning home from work, plaintiff set out to walk his dogs at approximately 2 a.m. on September 1, 1994. On that occasion, he and his dogs trod the same route they had taken for about ten years, walking south on Farrugut Avenue and turning left onto Frederick C. Green Memorial Boulevard (boulevard), the major thoroughfare circling and contained exclusively within the city-owned park. As plaintiff continued on the boulevard, with Edgewood Lake on his right, he was struck by a falling tree limb that he approximated to be forty to sixty feet in

length. The blow knocked him unconscious. When plaintiff awoke, he walked home and called emergency personnel. He was treated at Rhode Island Hospital for severe dizziness, ringing in his ear, slurred speech, blurred vision and a headache. Later that morning, plaintiff experienced the first of many seizures that are treated with medication.

On September 20, 1994, plaintiff apparently filed a timely notice[1] of his injury with the city and a claim for compensation for his injuries against the city, pursuant to G.L.1956 § 45–15–5.[2] When plaintiff's claim was not satisfied within forty days of the presentment of his claim to the Providence City Council, he commenced suit in Superior Court, alleging that the city was negligent in maintaining the park. The city filed a motion for summary judgment, arguing that plaintiff was trespassing on city land after the park had closed, and therefore the city owed plaintiff a duty only to refrain from willfully or wantonly causing injury. The motion justice granted the motion and entered judgment accordingly. The plaintiff appealed.

### Standard of Review

This Court reviews the grant of a motion for summary judgment on a *de novo* basis, applying the same criteria as the trial court. *Marr Scaffolding Co. v.*

*Fairground Forms, Inc.*, 682 A.2d 455, 457 (R.I.1996). Accordingly, "we shall affirm a summary judgment if, after reviewing the evidence in the light most favorable to the nonmoving party, we are of the opinion that no genuine issue of material fact exists and 'that the moving party is entitled to judgment as a matter of law.'" *Rousseau v. K.N. Construction, Inc.*, 727 A.2d 190, 192 (R.I.1999). "Moreover, a party who opposes a motion for summary judgment carries the burden of proving by competent evidence the existence of a disputed material issue of fact and cannot rest on allegations or denials in the pleadings or on conclusions or legal opinions." *Accent Store Design, Inc. v. Marathon House, Inc.*, 674 A.2d 1223, 1225 (R.I. 1996).

### Discussion

The plaintiff argued that the motion justice erred in finding that he was a trespasser because he had walked his dogs on the same boulevard for ten years and had been observed by park rangers and Providence police officers during those ten years. Therefore, plaintiff asserted, he had the implied consent of the city to walk his dogs in the park after closing. The plaintiff contended that the city's "implicit invitation" to him to continue his early morning walks in the park transformed

1. Because the issue was not raised, we assume, without deciding, that the letter sent by plaintiff's counsel "[i]n accordance with Rhode Island General Laws § 45–15–5" provided notice to the city under G.L.1956 § 45–15–9, which mandates that a plaintiff injured on a highway give to the town that is obliged to keep the highway in repair notice of "the time, place and cause of the injury" within sixty days. An examination of the claim letter reveals that plaintiff failed to supply the time and a sufficiently detailed description of the location of the accident, merely reporting it as having occurred "on the Fred C. Green Boulevard, in Roger Williams Park;" the road is a thoroughfare approximately three and a half miles in length. "The clear purpose of the statutory notice contemplated in § 45–15–9 is to inform the defendant of the nature of the claim that is ·made against it *in sufficient detail* to permit it to investigate the circum-

stances thereof and to prepare a defense against it." *Karczmarczyk v. Quinn*, 98 R.I. 174, 181, 200 A.2d 461, 465 (1964). (Emphasis added.)

2. Specifically, § 45–15–5 provides that every person seeking to obtain money due him or her from any town or city

"shall present to the town council of the town, or to the city council of the city, a particular account of that person's claim, debt, damages, or demand, and how incurred or contracted; which being done, in case just and due satisfaction is not made to .him or her by the town or city treasurer of the town or city within forty (40) days after the presentment of the claim, debt, damages, or demand, the person may commence his or her action against the treasurer for the recovery of the complaint."

him into an "implied licensee or invitee" who was entitled to visit a park that was maintained in a "reasonably safe condition." It is true that in *Mariorenzi v. Joseph DiPonte, Inc.*, 114 R.I. 294, 307, 333 A.2d 127, 133 (1975), we abandoned the common-law categories of invitee, licensee and trespasser, in respect to a landowner's duty of care, and imposed a duty of reasonable care regardless of the entrant's status. But, almost twenty years later, in *Tantimonico v. Allendale Mutual Insurance Co.*, 637 A.2d 1056, 1061–62 (R.I. 1994), we overruled *Mariorenzi* with respect to trespassers and readopted the common-law rule that limited the duty in respect to trespassers to refraining from willfully or wantonly causing injury. Because we hold that he was a trespasser, we reject plaintiff's suggestion of an implied invitation.

■ In general, "municipalities, like other landowners, owe a duty to 'maintain the[ir] property in a reasonably safe condition for the benefit of those persons who might come upon the land.'" *Brindamour v. City of Warwick*, 697 A.2d 1075, 1077 (R.I.1997) (quoting *O'Brien v. State*, 555 A.2d 334, 338 (R.I.1989)). This duty does not extend to trespassers, however. *Brindamour*, 697 A.2d at 1077 (citing *Tantimonico*, 637 A.2d 1056, 1061 (R.I.1994)). A trespasser is "[o]ne who intentionally and without consent or privilege enters another's property." *Ferreira v. Strack*, 652 A.2d 965, 969 (R.I.1995) (quoting Black's Law Dictionary 1504 (6th ed.1990)). We have explained that a trespasser "enters upon the property of another without any right, lawful authority, or express or implied invitation, permission, or license, not in performance of any duties to the owner, but merely for his own purpose, pleasure or convenience." *Ferreira*, 652 A.2d at 969 (quoting *Mendoza v. City of Corpus Christi*, 700 S.W.2d 652, 654 (Tex.Ct.App.1985)).

■ We have explicitly held that an individual who enters a city park after closing is a trespasser. *Brindamour*, 697 A.2d at 1077. The plaintiff in this case, by his own admissions, was in the park after closing.[3] Moreover, plaintiff does not dispute the clear language of § 18–2 of the Providence Code of Ordinances, which states that "Roger Williams Park shall be opened to the public from 7:00 a.m. to 9:00 p.m.," and further that "[n]o person shall enter or be within limits of said park except by the regular hours." Consequently, plaintiff was a trespasser when he was injured. We are not persuaded to hold differently, based upon plaintiff's efforts to distinguish his case from the facts in *Brindamour*.

In *Brindamour*, 697 A.2d at 1076, a passenger was killed when the car in which she was riding struck a tree in a city park after closing hours. We held that the passenger was a trespasser and that the city owed her a duty only to refrain from willfully and wantonly causing injury. *Id.* at 1077. We concluded, therefore, that the trial justice properly granted summary judgment in favor of the city on the decedent's estate's claim for damages caused by the city's allegedly negligent maintenance of a city park road. *Id.*

■ The plaintiff here attempted to distinguish this case from *Brindamour* by arguing that he had the "implied invitation" of the city to visit the park after closing hours, whereas the decedent in *Brindamour* apparently had no basis to believe that she was welcome in the park after closing. Specifically, plaintiff claimed that the failure of the Providence police and park rangers to eject him from the park upon seeing him on his late-night excursions constituted an invitation or implied consent to him to visit the park after regular hours.

---

**3.** In his answers to interrogatories, plaintiff stated, "I was walking my two dogs through Roger Williams Park at approximately 2 a.m.," and "[t]he tree was located in Roger Williams Park."

There is simply no basis for this assertion. The park was closed under a duly enacted ordinance. Local police or park rangers are not endowed with power to waive the provisions of the ordinance by affirmatively or impliedly inviting persons into the park after closing. Moreover, to conclude otherwise would be equivalent to holding that a landowner who does not aggressively exclude a trespasser thereby assumes an enhanced duty of care towards the trespasser or that a driver who regularly exceeds the authorized highway speed limit while observed by law enforcement officials can claim an implied permission to speed. We decline plaintiff's invitation to conclude that the city's alleged knowledge of plaintiff's late-night walks placed an affirmative duty upon Providence to affirmatively bar him from the park in order to avoid a heightened burden.

 In our opinion, the city owed the plaintiff, a trespasser, the duty only to refrain from willfully or wantonly causing him injury. *Brindamour*, 697 A.2d at 1077. The plaintiff, however, has failed to provide evidence of willful or wanton conduct. Moreover, the city claimed that it supplied photographs of the tree that revealed apparently healthy vegetation and an abundance of green foliage. Through deposition testimony, Louis Bobola, the city forester, opined that the tree limb had fallen because it was internally infested with carpenter ants, causing damage not visible by external observation. Perhaps most damaging to the plaintiff's case were his own statements. Specifically, in his answers to interrogatories, the plaintiff stated that he had passed the tree approximately five times per week in the three months prior to the accident, yet he admitted that he had neither observed the alleged defect, nor had he noticed anything unusual or peculiar about the tree. Because the record is devoid of evidence that would support an allegation of willful or wanton conduct, we conclude that the trial justice properly granted summary judgment in favor of the city.

Therefore, for the foregoing reasons, we deny and dismiss the plaintiff's appeal and affirm the judgment of the Superior Court to which we remand the papers in this case.