DECISION
These cases have been consolidated.[1] The condemnation action was originally filed in the Superior Court, Kent County, to effectuate a "quick-take" condemnation by the Rhode Island Economic Development Corporation (hereinafter "RIEDC" or "EDC") in accordance with the provisions of G.L. 1956 § 42-64-9.
 FACTS AND TRAVEL[2]
In June, 2004, the EDC Board, at the request of their wholly owned subsidiary, Rhode Island Airport Corporation (hereinafter "RIAC"), voted to condemn a temporary easement in Garage B, a 750-car parking facility serving T.F. Green Airport. Garage B was then owned by The Parking Co., L.P. (hereinafter "TPC"). In accordance with the "quick-take" provision of the statute, on July 26, 2004, the Chairman of EDC issued a declaration that a temporary easement in Garage B was taken pursuant to chapter 64 of Title 42. In furtherance of EDC's declaration, EDC filed anex parte petition and attended an ex parte hearing before a justice of the Superior Court.[3] Thereafter, on July 28, 2004, an order of condemnation was entered. The order was then recorded in the land evidence records of the City of Warwick, and RIAC thereafter took possession of Garage B and began its operation of the Garage. TPC and the Bank appealed, "averring that the condemnation statute was unconstitutional, and that the taking was not for a public use." R.I. Econ. Dev. Corp. v. TheParking Co., L.P., 892 A.2d 87, 95 (R.I. 2006).
Our Supreme Court held that the "quick-take" statute constituted a constitutionally permissible method for the EDC to condemn property. Notwithstanding that ruling, the Court held that EDC applied the statute for an unlawful purpose in its failure to satisfy the public use requirement of the Takings Clause, and that the condemnation of an easement in Garage B "was inappropriate, motivated by a desire for increased revenue and was not undertaken for a legitimate public purpose." Id. at 104. The Court observed that the parties were bound by a preexisting contractual relationship, the Concession Lease Agreement (hereinafter "CLA"), which provided RIAC with an option to purchase Garage B before the expiration of the term set forth in the CLA, in accordance with an established fee schedule. The parties were unsuccessful in negotiating the financial terms of an early buy-out. The Court determined, therefore, that "by resorting to the quick-take statute, RIAC was able to gain control over Garage B before the CLA expired but without complying with this provision of the contract." Id. at 105.
The condemnation followed, and the Court concluded that these surrounding negotiations "belie[s] the purported public purpose of the condemnation." Id. The Court was satisfied that the circumstances surrounding the condemnation did not establish a public purpose for the taking, but rather exemplified an arbitrary and bad faith taking. The Court also addressed the manner in which EDC's power of eminent domain was exercised, ultimately concluding that "the utilization of a temporary easement for the purposes identified in this case does not satisfy [the] criteria and is a pretextual and inappropriate device."[4] Id. at 107. In its conclusion, the Court determined that the condemnation was "void," the judgment was vacated, Garage B was ordered returned to TPC, TPC's contract rights were restored "as of the date of the purported taking," and the case was remanded to the Superior Court "for further proceedings consistent with this opinion." Id. at 108.
Following the Supreme Court's decision, TPC and the Bank filed a counterclaim to assert a common law claim of trespass.[5]
Essentially, the counterclaim alleges that the failed condemnation, ruled unlawful by the Supreme Court, results as a matter of law in a claim of trespass, and that the accepted measure of damages for such a claim is in the form of mesneprofits.[6] TPC, accordingly, moves under RCP 56, for entry of judgment on the claim of trespass, and for an award of damages in the amount of $4,134,990.[7] TPC avers that this amount includes mesne profits, net of RIAC's reasonable direct, third party operating expenses, realized during its possession of Garage B.
The EDC, joined by RIAC, has filed a cross-motion for summary judgment, initially alleging that they possessed lawful authority to enter said premises and thus, as a matter of law, cannot be liable in trespass. Even if a claim of trespass lies, EDC claims the defense of sovereign immunity. Finally, EDC suggests that even if a trespass claim is available and not barred by sovereign immunity, TPC, as a counterclaim plaintiff, has applied a legally impermissible measure of damages.[8]
 STANDARD OF REVIEW
On a motion for summary judgment, the judgment sought shall be rendered if — when viewed in the light most favorable to the non-moving party — the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there are no genuine issues of material fact. See RCP 56. "The party opposing the motion for summary judgment `carries the burden of proving by competent evidence the existence of a disputed material issue of fact and cannot rest on allegations or denials in the pleadings or on conclusions or legal opinions.'" Bitting v. Gray, 897 A.2d 25, 31 (R.I. 2006) (citing Taylor v. Mass. Flora Realty, Inc., 840 A.2d 1126, 1129
(R.I. 2004)). "The court's purpose during summary judgment procedure is issue finding, not issue determination;" therefore, if there are issues of fact in dispute the motion for summary judgment must be denied. Capital Props., Inc. v. State,749 A.2d 1069, 1080 (R.I. 1999) (citing Indus. Nat'l Bank v.Peloso, 121 R.I. 305, 307, 397 A.2d 1312, 1313 (1979)). By reason of the facts concluded by the Supreme Court's decision, the viability of the counterclaim for trespass is ripe for summary disposition.
 ANALYSIS
The Trespass Claim
As articulated by our Supreme Court in Bennett v. Napolitano,746 A.2d 138 (R.I. 2000), a trespasser is "one who intentionally and without consent or privilege enters another's property."Id. at 141 (quoting Ferreira v. Strack, 652 A.2d 965, 969
(R.I. 1995)). Further explaining that a trespasser "enters upon the property of another without any right, lawful authority, or express or implied invitation, permission, or license, not in performance of any duties to the owner, but merely for his own purpose, pleasure or convenience." Id. (quoting Ferreira,652 A.2d at 969).
TPC alleges that EDC, the condemning authority, and RIAC, its subsidiary which was complicit by requesting that its parent corporation exercise its condemnation authority, be held jointly and severally liable as co-trespassers.[9] EDC and RIAC refute this assertion arguing that EDC adhered to the procedural requirements of a constitutionally valid condemnation statute and took possession in accordance with a valid and enforceable Court order. Therefore, EDC argues that a subsequent appellate reversal of the condemnation judgment does not result in the legal conclusion that EDC was a trespasser as of the date of the condemnation order.
TPC suggests that the Rhode Island Supreme Court has approved and authorized trespass claims whenever a governmental entity takes private property unlawfully. In support of such a proposition, TPC cites Pettis v. City of Providence,11 R.I. 372 (1876), and Chapman v. Pendleton, 34 R.I. 160, 82 A. 1063
(1912). In Pettis, the Court enunciated the following proposition:
 "[W]hen private property is taken for public use against the will of the owner, a strict compliance must be had with all provisions of law which are made for his protection and benefit, or the proceeding will be ineffectual." Id. at 374.
The Court in Pettis found that the City, in dispossessing the plaintiff of his property for highway purposes, did not proceed in accordance with the procedures set forth in the act, and accordingly was considered a "wrongdoer" whose actions gave rise to a claim for trespass. Id. at 374-75.
Similarly, in Chapman, the Town of Westerly entered upon three parcels of land for purposes of widening and reconstructing Watch Hill Road. The plaintiff, a farmer, sued the town for trespass, arguing that the condemnation was quashed by an order of the Superior Court, and therefore did not provide a legal basis for the Town's continuing possession of the plaintiff's property. The Chapman Court held:
 "[I]f the agents of the town entered upon the lands of the plaintiff without authority, they and the town, which is responsible for their acts done within the scope of their authority, are guilty of trespass." Id. at 1067.
The instant case is distinguishable from both Pettis andChapman. In those cases the Court found that the municipality entered upon the lands of the plaintiff wrongfully and without authority, in that there was a failure to adhere to the proper process to effectuate a valid condemnation. In the instant case, however, the Supreme Court specifically addressed the lawful viability of the "quick-take" process. The Court held that the EDC statute authorizing the taking of property without a pre-deprivation determination as to public purpose was constitutionally adequate. R.I. Econ. Dev. Corp.,892 A.2d at 102. EDC followed this procedure which led to the issuance of a valid and enforceable court order, by a court of competent jurisdiction, the effect of which was not stayed by any subsequent court order.
Herein, EDC exercised its condemning authority under the "quick-take" provision in § 42-64-9 of the General Laws. This section expressly provides that upon EDC's finding and determination that acquisition of real property is necessary, "such property shall be deemed to be required for a publicuse." See § 42-64-9(a) (emphasis added.) Therefore, the statute provides procedural requirements with which the EDC must comply in the course of a condemnation, as well as the authority for the EDC Board to vote and accordingly "deem," as a matter of law, that its taking is for a public purpose at the time the condemnation action occurs. While the condemnation judgment may have been voidable at the time of its issuance, a subsequent appellate declaration that the condemnation is void has only prospective effect, and the taking is not deemed void abinitio.
This rationale is fully supported by Rhode Island case law. InSmith v. Borden, 17 R.I. 220, 21 A. 351 (1891), the plaintiff had occupied a tenement which she had rented from the defendant. When the stipulated rent was unpaid, defendant sued for "trespass and ejectment." The Court of Common Pleas issued judgment in favor of the defendant, and execution issued thereon. The plaintiff filed a claim of trespass against the defendant, alleging that his removal of the plaintiff's household goods, in accordance with the execution, was void because the underlying judgment was against a married woman sued without her husband. The Supreme Court ruled that the judgment, as of the date it issued, was voidable, but not void, and used language instructive in this case:
 "[T]he question raised by the exceptions is whether a judgment against a married woman sued without her husband is to be regarded as void or as merely erroneous and voidable; for if void, it was a nullity, and afforded no protection to the defendant. If, however, on the other hand, it was merely erroneous and voidable, it would be valid until set aside and, having never been set aside, it was a valid subsisting judgment at the time of the service of the execution, and was a complete justification to the defendant for all acts done under its authority. We think that it was voidable, and not void. The rule is, that the judgment of a court having jurisdiction of the subject-matter and of the person, though erroneous, is not void, but is binding and conclusive upon the parties until it is set aside; that it cannot be impeached in any collateral suit or proceeding, but only on appeal, by writ of error, or by some appropriate proceeding operating directly upon it instituted for that purpose."
Smith, 17 R.I. at 221; see also Metts v. B.B. Realty Co.,108 R.I. 55, 271 A.2d 811 (1970) (prior judgment and execution in trespass and ejectment is res judicata in later filed claim for unlawful eviction.)[10]
While this Court is mindful of the clear language of the statute, as well as that of the Supreme Court, declaring that such a taking must be for a proper public purpose, the original condemnation was performed under valid statutory authority and was confirmed by a legally effective Superior Court order entered on July 28, 2004. During the period from July 28, 2004 through March 11, 2006, the EDC and RIAC, acting under color of an enforceable court order, gained exclusive possession of Garage B. That order remained in full force and effect until the Supreme Court acted to vacate the judgment.[11] Had TPC, prior to the issuance of the appellate decision, attempted without court process to wrest control of the facility from RIAC, a justice of this court would have had the authority to hold TPC in contempt of court for having violated a lawful decree.[12] EDC acted consistent with its lawful statutory authority, and entered upon the property of TPC in accordance with an order of condemnation. Therefore, as a matter of law, summary judgment must be denied as to the trespass counterclaim filed by TPC and the Bank, and granted as to EDC's and RIAC's cross-motion on said claim.[13]
 CONCLUSION
EDC's condemnation of a temporary easement in Garage B, and RIAC's subsequent entry upon and possession of Garage B at the T.F. Green Airport, were performed under lawful statutory authority in accordance with the "quick-take" provisions of §42-64-9 and a jurisdictionally valid order of the Superior Court. Accordingly, TPC and the Bank's counterclaim for trespass must fail as a matter of law.[14] The parties shall submit an appropriate form of order and judgment consistent with this decision.
[1] The cases before this Court are identified as KM-04-0665 (hereinafter "the condemnation action") and PB-04-4189 (hereinafter "the business calendar action"). The condemnation action was transferred pursuant to G.L. 1956 § 8-2-27 to Providence County for the purpose of consolidation with the business calendar action. Thereafter, by agreement of the parties, the cases were consolidated for all purposes other than trial.
[2] The facts and travel of this case are set forth by the Rhode Island Supreme Court in R.I. Econ. Dev. Corp. v. TheParking Co., L.P., 892 A.2d 87, 91-95 (R.I. 2006), and need not be exhaustively repeated herein.
[3] As the Court noted "[T]he singular function of the Superior Court is to approve the appropriate amount of just compensation so that the claim of any interested person will be satisfied. Once the Court approves the amount deposited in the registry, title to the property shall vest in the EDC; and the `property shall be deemed condemned and taken for the use of the corporation and the right to just compensation for the condemned property shall vest in the persons entitled to compensation[.]'"R.I. Econ. Dev. Corp., 892 A.2d at 100 (citing G.L. 1956 §42-64-9(f)).
[4] The Court stated that a temporary easement is generally utilized in connection with land taken in fee simple for a public project when an additional piece of contiguous land is needed for temporary access or storage. R.I. Econ. Dev. Corp.,892 A.2d at 107 (citing Hickey v. Town of Burrillville, 713 A.2d 781 (R.I. 1998).
[5] Bank of America and TriSail Capital Corporation (formerly Fleet National Bank and Fleet Real Estate, Inc.), which were defendants in the original condemnation case, joined with TPC in filing said counterclaim.
[6] "Mesne profits is a sum recovered for the value or benefit which a person in wrongful possession has derived from his wrongful occupation of land between the time when he acquired wrongful possession and the time when possession was taken from him." See Roukous v. DeGraft, 40 R.I. 57, 59, 99 A. 821, 822
(1917).
[7] This Court has been provided with the Affidavit of Robert H. Goff, Jr. (hereinafter "Goff Aff."), the Chief Financial Officer of TPC, which attests that the gross revenues generated by RIAC's use of Garage B from July 28, 2004 through December 31, 2005, based on figures provided to TPC by RIAC, amounted to $3,925,535. However, the figures from January 1, 2006 through March 11, 2006 [the date Garage B was returned to TPC] have not been provided to TPC; therefore, Mr. Goff has estimated that the gross revenues for said period total $603,795. Thus, the total gross revenues generated by RIAC's unlawful use of Garage B from July 28, 2004 through March 11, 2006 are stated to be $4,556,330. The total net revenues generated during this period are the gross revenues, less direct costs from July 28, 2004 through December 31, 2005, minus the estimated direct costs for January 1, 2006 through March 11, 2006, stated to be total net revenues in the amount of $4,134,990. (See Goff Aff., ¶ 2-4). The amounts set forth in the Goff Affidavit are not contested by the EDC or RIAC.
[8] EDC's position is that if TPC prevails, it is only entitled to its actual lost profits for the period of time it was dispossessed of its use of Garage B.
[9] A comment to the Restatement (Second) Torts § 158 (1956) provides that "one who intentionally causes another to do an act is under the same liability as though he himself does the act in question." See Restatement (Second) Torts § 158 cmt. j (1965).
[10] See Curtis v. Tromble, 155 Ariz. 429, 430,747 P.2d 590, 591 (Ariz.Ct.App. 1987) (citing Lewis v. Webb,208 Ark. 1084, 189 S.W.2d 376 (1945)) (holding that one who enters land under a court decree in his favor is not a "trespasser" even though the decree is subsequently reversed.)
[11] See W.R. Grace Co. v. Local Union 759, 461 U.S. 757,766 (1983) (holding "[i]t is beyond question that obedience to judicial orders is an important public policy. An injunction issued by a court acting within its jurisdiction must be obeyed until the injunction is vacated or withdrawn."); See also
Restatement (Second) Torts § 266 (1965) providing that "[o]ne is privileged to commit acts which would otherwise be a trespass to a chattel or a conversion when he acts pursuant to a court order which is valid or fair on its face."
[12] The authority of civil contempt is invoked "when it is proved by clear and convincing evidence that a lawful decree was violated." Biron v. Falardeau, 798 A.2d 379, 382 (R.I. 2002). There is no question herein that the Superior Court had clear and lawful jurisdiction to enter the condemnation judgment.
[13] EDC and RIAC allege that the Bank, as mortgagee, has no standing to raise a counterclaim for trespass since it never took possession of the property or invoked its right to do so. However, in light of this Court's ruling on the trespass counterclaim, the issue of the Bank's standing to assert such a claim is moot.
[14] Since this Court finds that the counterclaim for trespass fails as a matter of law, the Court need not consider the further defenses raised by EDC and RIAC relative to sovereign immunity and its alleged effects on damages, costs, attorneys' fees, and interest. Nor is the Court ruling on whether and to what extent TPC is entitled to "just compensation" relative to RIAC's temporary taking and use of the property, a question not before the Court on these cross-motions for summary judgment. Likewise, this Court's legal conclusions relative to the trespass counterclaim in the condemnation action are not intended to express an opinion on the pending issues in the business calendar action, including the claims relative to whether and to what extent the failed condemnation results in a claim for breach of contract under the CLA, and what the proper measure of damages would be if such a breach occurred. RIAC has filed motions seeking to have the Court determine some of these issues by way of partial summary judgment and/or by way of motions in limine
to limit the scope of trial. Those matters remain under advisement at this time.