Harry HILL et al.

v.

NATIONAL GRID et al.

No. 2009–214–Appeal.

Supreme Court of Rhode Island.

Jan. 21, 2011.

Ronald J. Resmini, Esq., Providence, for Plaintiff.

Stanley F. Pupecki, Esq., Providence, for Defendant.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, and INDEGLIA, JJ.

## OPINION

Justice FLAHERTY, for the Court.

On an idyllic fall afternoon, a group of youngsters was engaged in the classic American pastime of touch football. Their play was abruptly interrupted when twelve-year-old Austin Hill stumbled and cut himself on a protruding metal post. The plaintiffs filed a complaint for negligence in Providence County Superior Court, alleging that Austin was injured by a dangerous condition on property owned by the defendant, National Grid. The plaintiffs now appeal from a grant of summary judgment in favor of the defendant.

This case came before the Supreme Court on December 7, 2010, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After hearing the arguments of counsel and reviewing the memoranda of the parties, we are satisfied that cause has not been shown. Accordingly, we shall decide the appeal at this time without further briefing or argument. For the reasons set forth in this opinion, we vacate the judgment of the Superior Court.

## Facts and Travel

On the afternoon of October 4, 2006, Austin Hill accompanied several friends to a grass-covered vacant lot at the corner of Monticello Road and Williston Way in Pawtucket for a game of touch football.[1] While he was running, he suddenly tripped over an unseen metal pole that was protruding from the ground. Austin fell on the ground and struck a second metal pole, lacerating his left thigh. Because he was bleeding profusely, Austin hopped on his bike and went home. Austin's mother, Rebecca, brought the boy to a local emergency room, where he received treatment for the laceration. The wound eventually healed, but a permanent scar remains.

Harry and Rebecca Hill filed suit in Superior Court individually and as parents and next-of-kin to Austin and his siblings, Aydan and Jake. In their complaint, the Hills alleged that National Grid negligently maintained its property and that, as a result, Austin suffered injuries.[2] The defendant, a public utility that owned the lot, asserted that it owed no duty to Austin under the circumstances because he was a trespasser on its property. The plaintiffs contended that defendant had a duty under the attractive nuisance doctrine. After hearing arguments about the applicability of that doctrine, a justice of the Superior Court granted defendant's motion for summary judgment. She determined that plaintiffs had failed to make any showing that defendant knew or had reason to know that children were trespassing. It is from that decision that plaintiffs have sought review in this Court.

## Standard of Review

"In reviewing the granting of a motion for summary judgment, we conduct our review on a *de novo* basis; in doing so, we adhere to the same rules and criteria as did the hearing justice." *Classic Entertainment & Sports, Inc. v. Pemberton,* 988

---

1. Because this is an appeal from summary judgment sought by defendants, we review the facts in the light most favorable to plaintiffs.

2. In addition to their claim for personal injuries, plaintiffs also claimed a loss of consortium. Those claims were dismissed by agreement of the parties.

A.2d 847, 849 (R.I.2010). "A hearing justice should grant a party's motion for summary judgment 'if there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.'" *Id.* (quoting *Lynch v. Spirit Rent–A–Car, Inc.*, 965 A.2d 417, 424 (R.I.2009)). In reviewing the evidence, we draw "all reasonable inferences in the light most favorable to the nonmoving party." *Fiorenzano v. Lima*, 982 A.2d 585, 589 (R.I. 2009); *see also Planned Environments Management Corp. v. Robert*, 966 A.2d 117, 121 (R.I.2009); *Chavers v. Fleet Bank (RI) N.A.*, 844 A.2d 666, 669 (R.I.2004). It is the burden of the nonmoving party to prove the existence of a disputed issue of material fact by competent evidence; it "cannot rest on allegations or denials in the pleadings or on conclusions or legal opinions." *Classic Entertainment & Sports, Inc.*, 988 A.2d at 849 (quoting *Accent Store Design, Inc. v. Marathon House, Inc.*, 674 A.2d 1223, 1225 (R.I. 1996)); *see also Fiorenzano*, 982 A.2d at 589; *Chavers*, 844 A.2d at 669–70; *United Lending Corp. v. City of Providence*, 827 A.2d 626, 631 (R.I.2003). We have cautioned, however, that "[s]ummary judgment is an extreme remedy that should be applied cautiously." *Plainfield Pike Gas & Convenience, LLC v. 1889 Plainfield Pike Realty Corp.*, 994 A.2d 54, 57 (R.I. 2010) (quoting *Johnston v. Poulin*, 844 A.2d 707, 710 (R.I.2004)).

## Analysis
### A
### History of Attractive Nuisance

 It is a well-established principle of law that property owners owe no duty of care to trespassers but to refrain from wanton or willful conduct; and even then, only upon discovering a trespasser in a position of danger.[3] *Cain v. Johnson*, 755 A.2d 156, 160 (R.I.2000); *Tantimonico v. Allendale Mutual Insurance Co.*, 637 A.2d 1056, 1061 (R.I.1994). An exception to this principle is the so-called "attractive nuisance" doctrine, which, in some instances, imposes a duty of care on landowners to trespassing children. At the core of this doctrine is the policy that

"[t]here must and should be an accommodation between the landowner's unrestricted right to use of his land and society's interest in the protection of the life and limb of its young. When these respective social-economic interests are placed on the scale, the public's concern for a youth's safety far outweighs the owner's desire to utilize his land as he sees fit." *Haddad v. First National Stores, Inc.*, 109 R.I. 59, 64, 280 A.2d 93, 96 (1971).

Rhode Island adopted the Restatement (Second) *Torts'* articulation of the attractive nuisance doctrine in its 1971 decision in *Haddad.* There, a child was injured while being pushed around a defendant supermarket's parking lot in a shopping cart that had been left unsecured after the store had closed. Under the Restatement (Second) *Torts* § 339 at 197 (1965),

"[a] possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if

"(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and

"(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and

*Allendale Mutual Insurance Co.*, 637 A.2d 1056, 1061, 1061 n. 1 (R.I.1994).

---

**3.** Significantly, when articulating this principle, the Court specifically precluded its application to child-trespassers. *Tantimonico v.*

"(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and

"(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and

"(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children."

## B

### Current Status of the "Attractive Nuisance" Doctrine in Rhode Island

Since deciding *Haddad* in 1971, we have had but a few opportunities to consider the attractive nuisance doctrine.[4] In applying the doctrine to the situation at issue here, it is useful to consider the cases that have come before this Court recently. In 1992, we affirmed the Superior Court's grant of a directed verdict in favor of the landowner in *Bateman v. Mello*, 617 A.2d 877, 881 (R.I.1992) (child injured when he fell from a natural gas pipe upon which he was climbing while on defendant landowner's property). There we concluded that "[the] defendant had no reason to foresee that the gas pipe might be dangerous or involve an unreasonable risk of serious injury to [trespassing children]. The pipe and the spotlight are not, in and of themselves, inherently dangerous objects." *Id.* at 880. We further noted that the gas pipe served a useful purpose and, because it was not only the gas pipe, but also a spotlight activated by a preset timer that caused the plaintiff to fall, "that such a coincidental

string of happenings could not, under any test of reasonable foreseeability, have been anticipated by [the] defendant." *Id.*

We next considered the doctrine in *Wolf v. National Railroad Passenger Corp.*, 697 A.2d 1082, 1086–87 (R.I.1997). There we affirmed summary judgment in favor of the defendant railroad after a twelve-year-old boy was killed tragically while trying to outrun a train on a trestle that extended over the water. In *Wolf*, we embraced the view of the overwhelming majority of jurisdictions that train trestles, as a matter of law, are not attractive nuisances. *Id.* (citing *Holland v. Baltimore & Ohio Railroad Co.*, 431 A.2d 597, 602 (D.C.Ct.App. 1981) (*en banc*); *Brownfield v. Missouri Pacific Railroad Co.*, 794 S.W.2d 773, 777 (Tex.Ct.App.1990) (writ denied)). That rule rests on the notion that train trestles are an "obvious danger" to even young prospective trespassers. *Wolf,* 697 A.2d at 1087 (describing the trestle in question as a "deathtrap").

## C

### Facts Are Sufficient to Survive Summary Judgment

 Summary judgment is an extreme remedy because it results in the end of the suit. *See Plainfield Pike Gas & Convenience, LLC,* 994 A.2d at 57. As such, motions for summary judgment should be denied where genuine issues of material fact are present. *See Classic Entertainment & Sports, Inc.,* 988 A.2d at 849. As it did in the Superior Court, defendant argues before us that plaintiffs raised no material facts from which a jury could conclude (1) that defendant knew or had reason to know children were likely to trespass on the property or (2) that there was any dangerous condition on its land of

---

4. The first case this Court considered after adopting the attractive nuisance doctrine did not apply it because the injuries in question had occurred before this Court's decision in

*Haddad v. First National Stores, Inc.,* 109 R.I. 59, 280 A.2d 93 (1971). *See Mariorenzi v. Joseph DiPonte, Inc.,* 114 R.I. 294, 300 n. 1, 333 A.2d 127, 130 n. 1 (1975).

which it knew or had reason to know. The Superior Court agreed with that argument, but we do not.

In our opinion, plaintiffs have raised sufficient facts from which a reasonable jury could conclude that defendant knew or had reason to know trespass was likely.[5] First, defendant suggests in its argument that it must know or have reason to know that children *are* trespassing on the property. This, however, is not the teaching of § 339(a) of the Restatement (Second) *Torts;* that section does not require the defendant to know or have reason to know that children *are* trespassing on the property, but rather that children are *likely* to trespass on the premises. Indeed, comment *e* in the Reporter's Notes in the Restatement highlight this distinction by noting that § 339(a) applies "whether children *are* trespassing, or are *likely* to trespass." (Emphases added.)

In the deposition of Eric Gemborys, a National Grid employee, it was disclosed that he looks at the property five or six times a year.[6] He further indicated that he was familiar with the area surrounding the lot, that it was between School Street and Route 1A, and that it was situated in the midst of "quite a few" residential homes. He conceded that National Grid had a policy in place to address trespassers, noting that in the event children were playing on the property, the employee who observed that activity was supposed to call the police.[7] Collectively, these facts give rise to a genuine factual dispute about

whether the defendant knew or had reason to know that children were likely to trespass on the lot. Questions of fact must be resolved by a fact-finder and are not appropriate for summary judgment.

Also, defendant argues that the condition causing the injury, two protruding metal posts, was not one of which it knew or had reason to know. However, Mr. Gemborys testified at his deposition that he personally had visited the property five or six times over two years. He also described monthly maintenance by a grounds-keeping crew that mowed the grass and removed debris. Based on these activities by a variety of National Grid agents, a reasonable jury could conclude that defendant knew or had reason to know of the metal stakes protruding from the ground.

In summary, because there are disputed material facts from which a reasonable jury could find that the defendant knew or had reason to know that children were likely to trespass and knew or had reason to know of the potentially dangerous condition, the entry of summary judgment was improper.

### Conclusion

For the reasons set forth in this opinion, we vacate the judgment of the Superior Court. This file is remanded to that court.

---

5. "The words 'reason to know' * * * denote the fact that the actor has information from which a person of reasonable intelligence or of the superior intelligence of the actor would infer that the fact in question exists, or that such person would govern his conduct upon the assumption that such fact exists." Restatement (Second) *Torts* § 12 at 19 (1965).

6. Mr. Gemborys was not the employee charged with these responsibilities at the time

of the incident in question. However, the record suggests that his predecessor, now-deceased, carried on the same or similar functions.

7. Mr. Gemborys' deposition testimony is not completely clear, but he at least suggested that the protruding stakes may have held no trespassing signs at one point.