**Supreme Court**

No. 2012-213-Appeal.
No. 2012-268-Appeal.
(WC 06-681)

Steven T. Burton                    :

v.                    :

State of Rhode Island et al.            :

NOTICE:    This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Supreme Court

No. 2012-213-Appeal.
No. 2012-268-Appeal.
(WC 06-681)

Steven T. Burton         :

v.         :

State of Rhode Island et al.         :

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

# O P I N I O N

**Chief Justice Suttell, for the Court.**

> "While yet a boy I sought for ghosts, and sped
> Through many a listening chamber, cave and ruin
> And starlight wood, with fearful steps pursuing
> Hopes of high talk with the departed dead."[1]

An adolescent's search for ghosts in the reputedly haunted remains of the Ladd Center in the Town of Exeter ended in tragedy for seventeen-year-old Steven T. Burton (plaintiff or Burton). Rather than an encounter with "the departed dead," Burton and his companions discovered four glass bottles containing a clear liquid substance. As the boys were attempting to exit the building through a plywood-shuttered door, one of the bottles broke, splashing some of its contents onto the plaintiff. The liquid substance was later determined to be sulfuric acid, and it severely burned the plaintiff. Conceding his status as a trespasser, the plaintiff seeks recovery from the State of Rhode Island (state or defendant) under the doctrine of attractive nuisance.

---

[1] Percy Bysshe Shelley, Hymn to Intellectual Beauty, in English Romantic Writers 970-71 (David Perkins ed. 1967).

The plaintiff filed a complaint alleging negligence by the state, and he now appeals from a judgment in favor of the state entered after a jury-waived trial. On appeal, plaintiff argues that the trial justice erred in finding that the attractive-nuisance doctrine did not apply in the circumstances of this case. Further, plaintiff argues that the trial justice erred in not finding that the state shared some comparative fault for plaintiff's injuries. The state cross-appeals the denial of its motion for judgment as a matter of law.[2]

On November 20, 2013, this case came before the Supreme Court, sitting at Central Falls High School in the City of Central Falls, pursuant to an order directing the parties to show cause why the issues raised in this appeal should not be summarily decided. After considering the parties' written and oral submissions and reviewing the record, we conclude that cause has not been shown and that this case may be decided without further briefing or argument. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

## I

### Facts and Procedural History

On the evening of November 27, 2005, plaintiff gathered with four of his friends (ages fifteen to eighteen): T.D., C.A., H.C., and L.V., at T.D.'s home, drank "[m]aybe two" beers, and set off in C.A.'s truck to explore a local haunt—the former Ladd Center in the Town of Exeter. The Ladd property has been closed since 1994; and, in the years since, it has acquired a reputation in certain quarters as a home for ghosts and things that go bump in the night.[3] There is no perimeter fence around the property, but there are a number of "No Trespassing" signs

---

[2] Because we affirm the Superior Court judgment in favor of the state, we need not address defendant's cross-appeal.

[3] "From ghoulies and ghosties and long-leggety beasties [a]nd things that go bump in the night, Good Lord, deliver us!" Cornish prayer (Anonymous) in Bartlett's Familiar Quotations, 779 (Justin Kaplan ed. 16th edition, 1992).

posted, and the building that was the focus of the group's exploration was secured by plywood boards over the windows on the first and second floors, chains on the doors, and metal grates welded shut. The plaintiff had visited the property on two prior occasions, and there was testimony that members of the group were aware that they should not "get caught" on the premises. The plaintiff testified that he had not sought permission to enter the Ladd Center property.

Undaunted by the numerous obstacles to access, the group shimmied up a pipe to access a third-story window. Once inside, the group began to explore the abandoned hospital building. Although they failed to discover any ghosts, they did encounter the detritus of "medical-like tools, * * * bed frames, * * * broken stuff" left behind when the Center closed. Eventually, the group made an intriguing discovery—a cache of four clear glass bottles housed in a Styrofoam container inside a locker.[4] The bottles appeared to be gallon-sized and contained a clear liquid; the labels on the bottles were decrepit and illegible. L.V. testified that he poured a small amount of liquid from one of the bottles onto a table, to see what it was. It was apparent to the group that the liquid had a syrup-like consistency and that it was not water. The plaintiff testified that he believed the bottle contained a hazardous material. Despite not knowing what substance was contained in the vessels, the group spirited away three of the bottles.

The group later made its way to the first floor of the building and searched for an exit, finally kicking out part of the plywood that covered an exterior door and slipping, one by one, through the opening created between the plywood and the door frame. The plaintiff exited just ahead of H.C., who was carrying two of the gallon bottles. H.C. dropped a bottle which broke,

---

[4] The plaintiff testified that the Styrofoam container was found within an open, unlocked locker.

- 3 -

spattering both plaintiff and H.C. with the unknown liquid.[5]  A few seconds later, plaintiff felt a burning sensation on his legs.  He rubbed his hand on them and his hand started burning.  Realizing the liquid was "some kind of chemical," plaintiff stripped off his clothes, leaving his wallet and cell phone behind, and ran screaming for C.A.'s truck.  The caustic liquid was later determined to be sulfuric acid.[6]

The plaintiff testified that C.A. drove him to Kent County Hospital, stopping first for cigarettes and to drop off a friend.  The plaintiff was treated at Kent County Hospital, where he told the staff that he had found the bottles in the woods.  He was later transferred to Rhode Island Hospital, where he told the staff that he had found the bottles in sand dunes and then slipped on concrete.

On November 9, 2006, plaintiff filed suit in Superior Court against the State of Rhode Island, Phoenix Houses of New England, and several John Does alleging that defendants "negligently failed to inspect, repair and/or maintain its premises free from defect and/or dangerous condition."[7]  On January 18, 2012, a bench trial was conducted, at which time plaintiff testified and presented two additional witnesses: L.V. and former State Buildings and Grounds Coordinator Carl Abbruzzese.  At the conclusion of plaintiff's case, defendant moved for judgment as a matter of law.  The court reserved decision on the motion, and the state declined to call any witnesses.  On February 16, 2012, the trial justice issued a written decision

---

[5] H.C. also filed a claim against the state in a case that was consolidated with this one; that case settled and was dismissed by stipulation prior to plaintiff's trial.

[6] Sulfuric acid is "A highly corrosive, dense, oily liquid, * * * colorless to dark brown depending on its purity and used to manufacture a wide variety of chemicals and materials including fertilizers, paints, detergents, and explosives.  Also called oil of vitriol, vitriol." The American Heritage Dictionary of the English Language, 1732 (4th ed. 2000).

[7] On April 20, 2007, the claims against Phoenix Houses were dismissed with prejudice.  On November 27, 2007, plaintiff substituted Rhode Island Economic Development Corporation (EDC) for one of the John Does.  On January 4, 2011, summary judgment was entered on behalf of defendant EDC.

in favor of defendant, finding that plaintiff was a trespasser and that defendant did not owe him a duty of care. Further, the trial justice held that the attractive-nuisance doctrine did not apply to the facts of this case. Final judgment entered on February 27, 2012, and plaintiff filed a timely notice of appeal. Further facts will be provided as may be necessary to discuss the issues raised on appeal.

## II

### Standard of Review

"It is well settled that [t]his Court will not disturb the findings of a trial justice sitting without a jury unless such findings are clearly erroneous or unless the trial justice misconceived or overlooked material evidence * * * ." Reagan v. City of Newport, 43 A.3d 33, 37 (R.I. 2012) (quoting Notarantonio v. Notarantonio, 941 A.2d 138, 144 (R.I. 2008)). The determination of whether the attractive-nuisance doctrine applies to allow recovery for injuries incurred by a trespasser is a mixed question of law and fact. "The findings of a trial justice sitting without a jury are entitled to great weight, and the resolution of mixed questions of law and fact, as well as the inferences and conclusions drawn from the testimony and evidence, are entitled to the same deference." Rhode Island Depositors Economic Protection Corp. v. Bowen Court Associates, 763 A.2d 1005, 1007 (R.I. 2001) (quoting Hawkins v. Town of Foster, 708 A.2d 178, 182 (R.I. 1998)).

## III

### Discussion

On appeal, plaintiff argues that the trial justice erred in finding that the attractive-nuisance doctrine did not apply because plaintiff "did not fully realize the risk in taking the

bottles of sulfuric acid." The plaintiff further argues that the trial justice erred in failing to find that defendant shared "some comparative fault for the accident."

"It is a well-established principle of law that property owners owe no duty of care to trespassers but to refrain from wanton or willful conduct; and even then, only upon discovering a trespasser in a position of danger." Hill v. National Grid, 11 A.3d 110, 113 (R.I. 2011). We have defined "trespasser" as "[o]ne who intentionally and without consent or privilege enters another's property." Bennett v. Napolitano, 746 A.2d 138, 141 (R.I. 2000) (quoting Ferreira v. Strack, 652 A.2d 965, 969 (R.I. 1995)). Burton testified that he never sought permission to enter the property, and L.V. testified that it was "general knowledge" that they should not get caught on the property. Clearly, plaintiff was trespassing at the time of his injury.

There is an important exception to the rule that no duty is owed to trespassers—"the so-called 'attractive nuisance' doctrine, which, in some instances, imposes a duty of care on landowners to trespassing children." Hill, 11 A.3d at 113. Under the Restatement (Second) Torts § 339 at 197 (1965):

> "A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if
> "(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and
> "(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and
> "(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and
> "(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and
> "(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children."

This Court first adopted the Restatement (Second) Torts's articulation of the doctrine in Haddad v. First National Stores, Inc., 109 R.I. 59, 64, 280 A.2d 93, 96 (1971). The plaintiff in Haddad, 109 R.I. at 60, 280 A.2d at 94, was a five-year-old child who was injured while playing in a shopping cart. The Court first noted that it had previously refused to adopt the attractive-nuisance doctrine; in deciding to join the majority of states that had embraced attractive nuisance, the Court stated that

> "A young child cannot, because of his immaturity and lack of judgment, be deemed to be able to perceive all the dangers he might encounter as he trespasses on the land of others. There must and should be an accommodation between the landowner's unrestricted right to use of his land and society's interest in the protection of the life and limb of its young." Haddad, 109 R.I. at 64, 280 A.2d at 96.

In the years since Haddad, we have had only a handful of opportunities to consider the application of this doctrine. See Wolf v. National Railroad Passenger Corp., 697 A.2d 1082, 1086 (R.I. 1997) (holding that, as a matter of law, a railroad trestle is not an attractive nuisance because the risk of injury from an oncoming train would be apparent to anyone); Bateman v. Mello, 617 A.2d 877, 880 (R.I. 1992) (holding that, although the defendant landowner could reasonably expect neighborhood children to be on her premises, because no one had previously been injured while climbing on a gas pipe on the property, the defendant "had no reason to foresee that the gas pipe might * * * involve an unreasonable risk of serious injury" to children). It is significant that in no case have we applied the attractive-nuisance doctrine to a child older than twelve years old.[8] Indeed, comment c. to § 339 of the Restatement observes

---

[8] The plaintiff in Haddad v. First National Stores, Inc., 109 R.I. 59, 60, 280 A.2d 93, 94 (1971), was five; in Bateman v. Mello, 617 A.2d 877, 880 (R.I. 1992), the age of the child was unspecified; the plaintiff in Hill v. National Grid, 11 A.3d 110, 112 (R.I. 2011), was twelve.

- 7 -

"[While] [t]he great majority of the courts have rejected any * * * fixed age limit, and have held that there is no definite age beyond which the rule * * * does not apply. As the age of the child increases, conditions become fewer for which there can be recovery under this rule, until at some indeterminate point, probably beyond the age of sixteen, there are no longer any such conditions." Id. at 199.

The trial justice found that the state "knew that young children are likely to trespass on the Ladd Center property," and that it is "unreasonable and even irresponsible" that gallon bottles of acid could still be found on the premises. However, the trial justice held that, because plaintiff and his friends "realized the risk of taking the bottles with them and * * * did so anyway," the doctrine of attractive nuisance could not be applied to establish a duty.

We concur with the trial justice's reasoning. There was ample testimony that the state was aware that trespassing on the Ladd Center property was a frequent occurrence. Mr. Abbruzzese testified that "kids and adults" entered the buildings on the property "looking for ghosts and spirits and what the hell ever else they were looking for." To keep out would-be ghostbusters, the state sealed the first- and second-floor windows with plywood, chained exterior doors, and welded shut some entrances. However, knowledge alone is not sufficient to establish a duty to trespassers under the doctrine of attractive nuisance.

In order to establish such a duty, plaintiff would need to prove that "because of [his] youth" he "[did] not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it." Restatement (Second) Torts, § 339(c) at 197. In his submissions to this Court, plaintiff relies principally on William Prosser's 1959 law review article to support his assertion that the attractive-nuisance doctrine should apply to a seventeen-year-old. See William L. Prosser, Trespassing Children, 47 Calif. L. Rev. 427 (1959).

Prosser instructs that the doctrine first appeared in 1875 and was originally known as the "turntable doctrine" due to its early application to trespassing young children who had been "enticed upon the land by the [railroad] turntable, 'as a bait attracts a fish or a piece of stinking meat draws a dog,' so that the railroad was itself responsible for the trespass * * * ." Prosser, 47 Calif. L. Rev. at 430-31. Prosser offers little support for plaintiff's argument, however. Although he notes that "our present hazardous civilization" presents dangers that "a high school boy may very well not appreciate," he concludes only that, when considering such dangers, "the verdict has been sustained as to infants of thirteen and fourteen, and there are isolated instances of fifteen and sixteen." Id. at 441. Further, Prosser notes that

> "The one basic reason for a rule which distinguishes trespassing children from trespassing adults is the inability of the child to protect himself against the peril which he encounters. If that reason does not exist, it has been generally agreed that the whole policy of the special rule fails with it. The courts have been very firm in their insistence that if the child is in fact fully aware of the condition, understands and appreciates the danger which it carries, and is quite able to avoid it, he stands in no better position than any adult with similar knowledge and understanding." Id. at 461.

It strains credulity to think that plaintiff, a seventeen-year-old who was about to complete his G.E.D., did not realize the risk involved in climbing a pipe to an upper-story window and entering a dark, abandoned building. Further, the discovery of the bottles triggered enough caution within the group for L.V. to pour some of the liquid out for further examination. As plaintiff himself testified, when he saw the liquid in the bottle, he believed it contained a hazardous material.

The Restatement (Second) Torts noted in comment m. to § 339 that "the possessor is not subject to liability to a child who in fact discovers the condition and appreciates the full risk involved, but none the less chooses to encounter it out of recklessness or bravado." Id. at 204.

The plaintiff recognized the contents of the bottle to be hazardous. We have no doubt that, as is typical in a group of young men aged fifteen to eighteen, recklessness and bravado abound. The remedy for the injury that results when bravado meets caustic acid does not lie, however, in holding the landowner liable. There is nothing in the rule that would make a property owner the guarantor of the trespassing "child's" safety. The Restatement noted in comment b. to § 339:

> "It is now recognized by most * * * courts that the basis of [attractive nuisance] is merely the ordinary negligence basis of a duty of reasonable care not to inflict foreseeable harm on another, and that the fact that the child is a trespasser is merely one of the facts to be taken into consideration. The result is a limited obligation to the child, falling short of a duty to prevent all foreseeable harm to him, but requiring reasonable care as to those conditions against which he may be expected to be unable to protect himself." Id. at 198.

Regrettably, plaintiff was old enough to appreciate the risk of breaking into an abandoned building and of transporting a substance he "had reason to believe" was hazardous; his injury was the result of a failure to protect himself, rather than an inability to protect himself. Accordingly, it was not clearly erroneous for the trial justice to hold that plaintiff failed to establish that he was too young to appreciate the risk, and thus that the doctrine of attractive nuisance is inapplicable to this case.

Because, in light of his status as a trespasser, the plaintiff could not establish a duty on the part of the state, and therefore no liability exists, the plaintiff's argument that the state should share "some comparative fault" must fail. Absent a finding of negligence, there can be no comparative negligence.

**IV**

**Conclusion**

For the reasons stated herein, we affirm the judgment of the Superior Court. The papers in this case may be returned to the Superior Court.


**TITLE OF CASE:**       Steven T. Burton v. State of Rhode Island et al.

**CASE NO:**       No. 2012-213-Appeal.
No. 2012-268-Appeal.
(WC 06-681)

**COURT:**       Supreme Court

**DATE OPINION FILED:**   December 20, 2013

**JUSTICES:**       Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**       Chief Justice Paul A. Suttell

**SOURCE OF APPEAL:**   Washington County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Brian P. Stern

**ATTORNEYS ON APPEAL:**

For Plaintiff:   Michael S. Pezzullo, Esq.

For Defendant:  Chrisanne E. Wyrzkowski
                 Department of Attorney General