**Supreme Court**

No. 2021-21-Appeal.
(PC 16-2407)

Flavia Linnea Borgo      :

v.      :

The Narragansett Electric Company      :
d/b/a National Grid et al.

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Flavia Linnea Borgo　　　　　　:

v.　　　　　　　　　　　:

The Narragansett Electric Company　　:
　　d/b/a National Grid et al.

Present: Suttell, C.J., Goldberg, Robinson, and Lynch Prata, JJ.

**O P I N I O N**

**Chief Justice Suttell, for the Court.**　A tragic accident in a utility substation resulted in serious injuries to the plaintiff, eighteen-year-old Flavia Linnea Borgo (plaintiff or Borgo), including the amputation of her left hand.　The question confronting us is whether the property owner, the defendant, The Narragansett Electric Company d/b/a National Grid (defendant or National Grid), owed a duty of care to Borgo, an admitted trespasser at the time of the accident.[1]　A justice of the Superior Court ruled that National Grid did not owe Borgo a duty of care and granted the defendant's motion for summary judgment.　The plaintiff now appeals the Superior Court judgment.　This case came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised in this

---

[1] The plaintiff's complaint named a second entity, which was dismissed from the case in December 2016, and several John and/or Jane Doe defendants; for our purposes, the only defendant pertinent to the present appeal is National Grid.

appeal should not be summarily decided. After considering the parties' written and oral submissions and reviewing the record, we conclude that cause has not been shown and that this case may be decided without further briefing or argument. For the reasons stated in this opinion, we affirm the judgment of the Superior Court.

## I

### Facts and Travel

This action arises out of events that took place in April 2014. At that time, plaintiff was a freshman at Rhode Island School of Design (RISD) in Providence. According to plaintiff's deposition testimony, during the spring semester she was enrolled in various art classes, including a design class that required her to complete a "cityscape project"—that is, to photographically capture different parts of the city from different vantage points and "combine them into a painting."

A few weeks before the accident, plaintiff began thinking about including a property located at the corner of Eddy and South Streets in Providence in her cityscape project. The plaintiff testified that she discussed entering onto the property to take photographs with Nicholas Meehan, a fellow RISD student and a friend of plaintiff. According to plaintiff, Meehan told her that he had entered the property twice previously, and he agreed to accompany her. The plaintiff also testified that, before she attempted to enter the property, she had heard other RISD students discussing entering the property and had seen students using photographs of the

property as references for drawings and paintings they worked on in the RISD studios. According to plaintiff, at the time she decided to enter the property, she believed that the property was abandoned.

In the spring of 2014, the property in question contained two adjacent buildings that shared a wall but were otherwise entirely separate. At that time, one building was a decommissioned generating station not owned or maintained by National Grid, and the other building was an active electrical substation. It is uncontested that, at the time relevant to this action, National Grid owned and maintained the substation.

The plaintiff and Meehan entered the property on April 5, 2014, sometime around eight o'clock in the evening. The plaintiff testified that she did not see any signage indicating that the property was owned by National Grid or any signs that the property was still in use by anyone. Additionally, according to plaintiff, the gate in the fence on the property in front of the facility was physically open when she and Meehan arrived at the property that night, and there was no other fence blocking access to the buildings. However, National Grid contests plaintiff's testimony of the facts and asserts that there was a "No Trespassing" sign on a closed fence that plaintiff and Meehan crawled under to access the substation. This factual disparity is immaterial to our analysis, as there can be no question but that plaintiff was a trespasser.

After entering the property, plaintiff and Meehan climbed a fire escape to access the roof of the substation building, where, according to plaintiff, they took pictures of the Providence skyline. It is undisputed that plaintiff and Meehan then entered the building through a window or door on the roof of the building; however, plaintiff testified that the opening was uncovered, while National Grid contends that plaintiff and Meehan removed plywood to access the entry point. According to plaintiff, there was a ladder directly below the window that neither she nor Meehan placed there, but which facilitated their entry into the substation building.

At her deposition, plaintiff testified that, after she and Meehan entered the building, they wandered throughout the facility for a short while, sometimes taking photographs, until they came to a room that was like a long corridor. The plaintiff testified that her last memory before the accident was walking down that long hallway within the substation.

At his deposition, Meehan testified to having witnessed the accident. According to Meehan, the long corridor was filled with doors on one side that looked like doors to rooms, although it is undisputed that at least one was actually a door to a cabinet containing electrical equipment. Meehan testified that, within a few seconds of entering the long hallway, plaintiff's body came in contact with something inside a cabinet and suddenly there were sparks, a bright flash, and an indescribable noise. According to Meehan, the doors on the cabinet may have been

open, and in her papers plaintiff asserts that they were. Meehan testified that he grabbed plaintiff by her shirt and pulled her away from the cabinet; he then called 911.

According to Meehan, after the accident plaintiff fell on the ground and had a seizure. The plaintiff testified that she has a brief memory of being rescued by emergency personnel and then of waking up in the hospital later that night. As a result of the accident, plaintiff spent two months in the hospital, and her left hand was amputated.

On May 25, 2016, plaintiff filed a complaint in the Providence County Superior Court against National Grid and others alleging negligence. Specifically, plaintiff alleged that National Grid "owed a duty to maintain its substation * * * in a reasonably safe condition[,]" that it did not do so, and that "[a]s a direct and proximate result" of defendant's negligence, "plaintiff Flavia Linnea Borgo suffered severe and permanent injuries to her mind and body[.]"

In May 2020, after years of discovery, National Grid filed a motion for summary judgment, arguing that "[d]ue to the plaintiff's status as an adult trespasser, National Grid owed her no duty of care as a matter of law and is thus entitled to summary judgment." The plaintiff objected to the motion, and a hearing was held on October 2, 2020. In a bench decision rendered on that same day, the hearing justice granted National Grid's motion for summary judgment. On October 14,

2020, both an order granting National Grid's motion for summary judgment and a judgment in favor of National Grid entered. The plaintiff timely appealed the grant of National Grid's motion and resulting judgment.

## II

## Standard of Review

"This Court will review the grant of a motion for summary judgment *de novo*[.]" *Shorr v. Harris, as Trustee of Trust of Anna H. Blankstein*, 248 A.3d 633, 636 (R.I. 2021) (quoting *Lehigh Cement Co. v. Quinn*, 173 A.3d 1272, 1275 (R.I. 2017)). "We will affirm a summary judgment if, after reviewing the admissible evidence in the light most favorable to the nonmoving party, we conclude that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *Id.* (quoting *Midland Funding LLC v. Raposo*, 222 A.3d 484, 486 (R.I. 2019)). We have previously emphasized that "summary judgment is a drastic remedy, and a motion for summary judgment should be dealt with cautiously." *Id.* (quoting *Lehigh Cement Co.*, 173 A.3d at 1275). Furthermore, "the function of the trial justice in ruling on a motion for summary judgment is issue finding, not issue determination." *Limoges v. Nalco Company*, 157 A.3d 567, 571 (R.I. 2017) (quoting *Goodkin v. DeMaio*, 664 A.2d 1119, 1120 (R.I. 1995) (mem.)).

"This Court has often instructed that 'issues of negligence are ordinarily not susceptible of summary adjudication, but should be resolved by trial in the ordinary

manner.'" *Correia v. Bettencourt*, 162 A.3d 630, 635 (R.I. 2017) (quoting *Newstone Development, LLC v. East Pacific, LLC*, 140 A.3d 100, 103 (R.I. 2016)). However, "[s]ummary judgment should enter against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case" because the "complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Vicente v. Pinto's Auto & Truck Repair, LLC*, 230 A.3d 588, 591, 592 (R.I. 2020) (brackets omitted) (quoting *Holley v. Argonaut Holdings, Inc.*, 968 A.2d 271, 274 (R.I. 2009)).

**III**

**Discussion**

On appeal, plaintiff contends that the hearing justice erred by granting National Grid's motion for summary judgment. Specifically, plaintiff argues that the hearing justice erred by not considering plaintiff's argument that National Grid owed plaintiff a duty not under premises liability, but rather as a result of its power-distribution activities that were regulated by the Rhode Island Public Utilities Commission (PUC) and subject to certain safety regulations.

Alternatively, plaintiff contends that, even if the hearing justice properly determined that National Grid could only have owed plaintiff a duty under premises liability, the hearing justice erred by failing to recognize that notice of repeated

trespass could create a landowner's duty to a trespasser in the absence of actual discovery of that trespasser.

Lastly, plaintiff avers that the hearing justice erred by disregarding evidence in the record, namely an expert affidavit proffered by plaintiff, which plaintiff alleges creates a genuine dispute of material fact as to whether National Grid breached a duty owed under either of plaintiff's alternative theories.

## A

## Duty

This appeal turns on one relatively narrow issue: Did National Grid owe a legal duty to plaintiff? "In order to properly assert a claim for negligence, 'a plaintiff must establish a legally cognizable duty owed by a defendant to a plaintiff, a breach of that duty, proximate causation between the conduct and the resulting injury, and the actual loss or damage.'" *Lowney v. Canteen Realty, LLC*, 252 A.3d 259, 262 (R.I. 2021) (quoting *Ouch v. Khea*, 963 A.2d 630, 633 (R.I. 2009)). "Although complaints sounding in negligence generally are not amenable to summary judgment and should be resolved by fact finding at the trial court, the existence of a duty is a question of law." *Id.* (quoting *Berard v. HCP, Inc.*, 64 A.3d 1215, 1218 (R.I. 2013)).

"Only when a party properly overcomes the duty hurdle in a negligence action is the party entitled to a factual determination on each of the remaining elements[.]" *Lowney*, 252 A.3d at 262 (brackets omitted) (quoting *Berard*, 64 A.3d at 1218).

Consequently, "[i]f the court finds that no duty exists, the trier of fact has nothing to consider and a motion for summary judgment must be granted." *Correia*, 162 A.2d at 635 (quoting *Gushlaw v. Milner*, 42 A.3d 1245, 1252 (R.I. 2012)). "The assessment of whether or not a duty exists is conducted on a 'case-by-case basis.'" *Id.* (quoting *Gushlaw*, 42 A.3d at 1252).

The plaintiff avers that National Grid owed her a legally cognizable duty, either through premises liability, through safety regulations imposed on National Grid by the PUC, or through National Grid's conduct as an electrical distributor. For the reasons set forth *infra*, we disagree.

**1**

**Premises Liability Duty**

We first examine plaintiff's contention that, under premises liability, National Grid owed her a duty as a property owner. The plaintiff admitted in Superior Court that, for purposes of the motion for summary judgment, she was a trespasser at the substation; she also acknowledges that in Rhode Island trespassers are owed a duty only after they are discovered. However, according to plaintiff, "the discovery rule applicable to the standard of care owed to a trespasser does not require actual discovery by a property owner, but can be proven through constructive knowledge of repeat trespassers[.]" The plaintiff claims that this Court recognized constructive

discovery of trespassers as creating a duty owed by property owners to trespassers in *Berman v. Sitrin*, 991 A.2d 1038 (R.I. 2010).

It is well settled that under Rhode Island law, landowners owe a duty to trespassers only after discovering them in a position of peril, and the duty owed after discovery is only to refrain from willful or wanton conduct. *See, e.g.*, *Burton v. State*, 80 A.3d 856, 860-61 (R.I. 2013) ("It is a well-established principle of law that property owners owe no duty of care to trespassers but to refrain from wanton or willful conduct; and even then, only upon discovering a trespasser in a position of danger.") (quoting *Hill v. National Grid*, 11 A.3d 110, 113 (R.I. 2011)); *Cain v. Johnson*, 755 A.2d 156, 160 (R.I. 2000) ("Under Rhode Island law, it is well settled that a landowner owes a trespasser no duty except to refrain from willful or wanton conduct. It is also well settled that such a duty arises only after a trespasser is discovered in a position of danger.") (internal citations omitted); *Previte v. Wanskuck Co.*, 80 R.I. 1, 3, 90 A.2d 769, 770 (1952) ("The plaintiffs admit that in the ordinary case under the established law in this state no duty is owed a trespasser by a landowner except to refrain from injuring him wantonly or willfully after discovering his peril.").[2]

---

[2] Although we departed from this rule in *Mariorenzi v. Joseph DiPonte, Inc.*, 114 R.I. 294, 333 A.2d 127 (1975), by abolishing the "common-law categories of invitee, licensee, and trespasser[,]" *Mariorenzi*, 114 R.I. at 307, 333 A.2d at 133, we explicitly overturned *Mariorenzi* with respect to trespassers in *Tantimonico v. Allendale Mutual Insurance Company*, 637 A.2d 1056 (R.I. 1994), and reestablished

Therefore, under Rhode Island law, a trespasser must be actually discovered by a landowner before any duty is owed. *Cain*, 755 A.2d at 161 ("[T]his Court has steadfastly held that a landowner owes a trespasser no duty until he or she is *actually* discovered in a position of peril.") (emphasis added). Moreover, when a landowner owes a duty to a trespasser, that duty cannot be breached by mere negligence. *Brindamour v. City of Warwick*, 697 A.2d 1075, 1077 (R.I. 1997) ("[A] landowner only owes to trespassers the duty to refrain from wanton or willful injury. There is no liability for mere negligence.") (internal citation omitted).

However, plaintiff relies heavily on *Berman* to argue that constructive discovery of a trespasser gives rise to a landowner duty even absent actual discovery. In *Berman*, we held that, under Rhode Island's Recreational Use Statute, G.L. 1956 chapter 6 of title 32 (RUS), the City of Newport owed a duty to the plaintiff who was injured on the Cliff Walk, despite the fact that the plaintiff was not actually discovered by the city in a position of danger. *See Berman*, 991 A.2d at 1042, 1051. Our holding rested on the fact that "[t]he record before us [was] replete with evidence that the city, for some time, ha[d] known about the Cliff Walk's latent dangers," including, specifically, the instability of the soil that caused the plaintiff's injury. *Id.* at 1049. Because we found that "tragedies such as this ha[d] occurred on

---

the common-law rule as to trespassers. *See Tantimonico*, 637 A.2d at 1057 ("We now take this opportunity to depart from the holding in *Mariorenzi* as it pertains to trespassers.").

- 11 -

multiple occasions[,]" and that the city had actual notice of the dangerous conditions, we held that the discovery rule was satisfied. *Id.* at 1050, 1051.

But plaintiff's reliance on *Berman* as analogous to the present case is misplaced. *Berman* stands alone as an extraordinary case and is factually dissimilar to the scenario presented here. We have repeatedly distinguished *Berman* from cases where there was no pattern of similar previous injuries such that the landowner should have been on notice of the danger. *See, e.g.*, *Yattaw v. City of East Providence*, 203 A.3d 1167, 1173 (R.I. 2019) ("[W]e are of the opinion that the facts and circumstances of this case are far from the extreme and egregious conduct attributed to the City of Newport in *Berman*."); *Roy v. State*, 139 A.3d 480, 490 (R.I. 2016) ("Here, there is only one indication in the record of a relatively minor injury reported several days before Roy's catastrophic injuries. Therefore * * * this case is distinguishable from *Berman*."); *Carlson v. Town of South Kingstown*, 111 A.3d 819, 823 (R.I. 2015) ("It is true that in *Berman* * * * a duty was imposed on a municipality for injuries suffered by a plaintiff on land that was recreational in nature. However, in that case, the Court was constrained to address the significance of repeated catastrophic injuries of which the defendant municipality was clearly aware."). Here, plaintiff has not argued that National Grid had notice of a danger that would lead to a trespasser's electrocution, or that there was a pattern of electrocution injuries taking place at the substation. Thus, the facts presented here

do not give rise to an inference, like that in *Berman*, finding a duty to a trespasser despite a lack of actual discovery.[3]

The plaintiff also cites to *Hill v. National Grid*, cited *supra*, to support her contention that constructive discovery gives rise to a duty, because there we stated that summary judgment was inappropriate given that "plaintiffs have raised sufficient facts from which a reasonable jury could conclude that defendant knew or had reason to know trespass was likely." *Hill*, 11 A.3d at 115. However, plaintiff ignores that *Hill* was not a standard trespasser case—rather, it was an attractive-nuisance case, because the plaintiff was a child. *Id.* at 112, 114. The attractive-nuisance doctrine, which does consider constructive discovery, has no place in the present case because it is undisputed that at the time of the accident plaintiff was eighteen years old, and "in no case have we applied the attractive-nuisance doctrine to a child older than twelve years old." *Burton*, 80 A.3d at 862.

---

[3] We also note that *Berman v. Sitrin*, 991 A.2d 1038 (R.I. 2010), is a case that only considered duties owed under the RUS, not under the common law, and that the RUS is inapplicable here because the substation was decidedly not "land * * * ma[de] * * * available to the public for recreational purposes[.]" *See* G.L. 1956 § 32-6-1. Although plaintiff is correct that we have previously stated that the RUS treats users of property open to the public for recreational use as trespassers, *see, e.g.*, *Cancel v. City of Providence*, 187 A.3d 347, 350 (R.I. 2018), we find no support for plaintiff's contention that "the standard must be identical under the common law and the RUS." However, because *Berman* does not aid plaintiff even if this were a RUS case, we decline to decide here whether RUS caselaw is applicable to common-law trespass cases.

Additionally, many of our previous cases on landowner liability to trespassers have considered, and consistently have rejected, the so-called "beaten path exception" to the discovery rule, which creates a duty to trespassers where a landowner has knowledge of frequent use of the property by trespassers. *See, e.g.*, *Cain*, 755 A.2d at 160-61; *Wolf v. National Railroad Passenger Corp.*, 697 A.2d 1082, 1086 (R.I. 1997); *Zoubra v. New York, New Haven and Hartford Railroad Company*, 89 R.I. 41, 44, 150 A.2d 643, 645 (1959); *Boday v. N. Y., N. H. & H. R. R. Co.*, 53 R.I. 207, 209-10, 165 A. 448, 449 (1933). Thus, even taken in the light most favorable to plaintiff, evidence of frequent trespassers at the substation, such as the existence of a ladder inside the building that, according to plaintiff, was in place when she arrived and was not placed there by National Grid, does not give rise to a duty owed to plaintiff by National Grid.

Because it is undisputed that at the time of the accident plaintiff was an adult trespasser, under our well-settled law she was owed no duty unless she was actually discovered in a position of peril by National Grid. *Cain*, 755 A.2d at 161. Accordingly, because plaintiff has not provided any evidence, nor indeed ever argued, that she was discovered by National Grid at any point during her time at the substation, under our premises liability principles, no duty flowing to her from National Grid ever arose.

- 14 -

## 2

## Other Duties

Alternatively, plaintiff also avers that National Grid owed her a duty outside of premises liability. Specifically, plaintiff argues that the safety regulations promulgated by the PUC that National Grid is subject to "create a duty and impose a standard of care" upon National Grid. The plaintiff also argues that, under the factors we often consider in determining whether a duty is owed, National Grid owed her a duty because of its ongoing conduct at the substation distributing electrical power. *See Banks v. Bowen's Landing Corp.*, 522 A.2d 1222, 1225 (R.I. 1987).

Under Rhode Island law, violation of a statute does not constitute negligence *per se*; however, such a violation is admissible as evidence of negligence and can be used to establish a duty. *Paquin v. Tillinghast*, 517 A.2d 246, 248 (R.I. 1986). Importantly, however, statutory violations may be considered as evidence of negligence "only as respects persons whom the statute was designed to protect." *Id.* Additionally,

> "[i]f the injured person falls outside the protective orbit of the statute, his claim based on breach of a statutory duty of care will not be presented to the jury for no such duty was owed to him. Hence, we must be guided primarily by the intent of the Legislature in determining for what class of persons, if any, a statute creates a duty of care." *Id.* (internal citation omitted).

Here, plaintiff asserts that safety regulations promulgated by the PUC, and applicable to National Grid as a public utility engaged in distributing electricity, created a duty of care owed to her by National Grid.[4] *See* 815 RICR 30-00-1.2(C) (defining "public utility" under the PUC regulations). Specifically, plaintiff points to 815 RICR 30-00-1.8, parts (A)(1) and (B)(1), as creating a duty. Regulation 815 RICR 30-00-1.8(A)(1) reads, in relevant part:

> "In determining standard practice, the Division will be guided by the provisions of the NATIONAL ELECTRICAL SAFETY CODE, the NATIONAL ELECTRIC CODE, and such other relevant codes as shall be approved by the American Standards Association[.]"

Regulation 815 RICR 30-00-1.8(B)(1) reads, in its entirety:

> "Each public utility shall construct, install, operate and maintain its plant, structures, equipment and lines in accordance with standard practice as defined in paragraph 1 above, and insofar as practical, in such a manner as best to accommodate the public, and to prevent interference with service furnished by other public utilities."

---

[4] We note that we have not previously decided whether a violation of a regulation, as opposed to a statute or ordinance, is similarly admissible as evidence of negligence and to establish a duty. *See, e.g.*, *Paquin v. Tillinghast*, 517 A.2d 246, 248 (R.I. 1986) (considering a violation of a statute); *Clements v. Tashjoin*, 92 R.I. 308, 309, 313-14, 168 A.2d 472, 472, 474 (1961) (considering a violation of a statute, but stating that evidence of violations of ordinances and statutes is admissible); *Sitko v. Jastrzebski*, 68 R.I. 207, 209-10, 27 A.2d 178, 179 (1942) (considering a violation of an ordinance). However, for the purposes of this appeal, we assume, without deciding, that a violation of a properly promulgated regulation is admissible in the same manner as violations of statutes and ordinances.

Unfortunately for plaintiff, there is no language in either regulation that gives any indication that the imposition of national safety standards on public utilities was designed to protect members of the general public present at an electrical plant. And, although this Court considers pertinent statutes together when looking for evidence that a plaintiff is a member of a class intended to be protected by a statute, *see Paquin*, 517 A.2d at 248, there is no mention in the other regulations applicable to electric utilities of a purpose or concern for safety of the general public. *See* 815 RICR 30-00-1.1–1.9. Indeed, outside of the rather vague instruction in 815 RICR 30-00-1.8(B) to follow the standard practices in "a manner as best * * * accommodate[s] the public," members of the public are mentioned in the regulations only as customers. *Cf. Paquin*, 517 A.2d at 248 (finding that a statute, when considered in the context of other relevant statutes, protected children because children were mentioned in the other relevant statutes); *see, e.g.*, 815 RICR 30-00-1.2(E) (defining "customer"); 815 RICR 30-00-1.3(C), (F) (service provisions relating to customers).

Additionally, plaintiff has not provided any support in her submissions for her conclusory contention that the regulations create a duty because they "have the purpose and intent of protecting reasonably foreseeable individuals from harms attendant to the generation and distribution of electricity." As we have often held, "[i]t is not enough merely to mention a possible argument in the most skeletal way,

- 17 -

leaving the court to do counsel's work[;] * * * a litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace." *State v. Florez*, 138 A.3d 789, 798 n.10 (R.I. 2016) (quoting *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990)).

Therefore, because we cannot discern an intention from the regulations to protect members of the general public harmed at an electrical facility, we must conclude that plaintiff "falls outside the protective orbit" of the regulations. *See Paquin*, 517 A.2d at 248. Accordingly, the regulations did not create a duty owed to plaintiff by National Grid.

Moreover, plaintiff has waived her argument that National Grid's conduct in distributing electrical power gives rise to a duty under the *Banks* factors because she did not raise that argument below.[5] "According to this Court's well settled raise-or-waive rule, issues not properly presented before the trial court may not be raised for the first time on appeal." *Decathlon Investments v. Medeiros*, 252 A.3d

---

[5] In *Banks v. Bowen's Landing Corp.*, 522 A.2d 1222 (R.I. 1987), we identified several factors that we use to determine whether a duty exists: "In considering whether a duty exists, among the factors considered are (1) the foreseeability of harm to the plaintiff, (2) the degree of certainty that the plaintiff suffered an injury, (3) the closeness of connection between the defendant's conduct and the injury suffered, (4) the policy of preventing future harm, and (5) the extent of the burden to the defendant and the consequences to the community for imposing a duty to exercise care with resulting liability for breach." *Banks*, 522 A.2d at 1225.

268, 270 (R.I. 2021) (quoting *Federal National Mortgage Association v. Malinou*, 101 A.3d 860, 865 (R.I. 2014)).

Finally, we heed our observation in *Cain* that "[w]e are not persuaded that this Court should promulgate special rules for different types of landowners. Such fragmentation of duties would create chaos in the attempted application of rules wherein consistency is essential." *Cain*, 755 A.2d at 161. Thus, plaintiff's argument that National Grid owed her a duty independent of its status as owner of the property is unavailing.

**B**

**Evidence of Breach of Duty**

Lastly, plaintiff argues that the hearing justice erred by disregarding an expert affidavit that, according to plaintiff, provided evidence that National Grid breached a duty it owed to plaintiff, whether as a landowner or as an electrical distributor subject to PUC regulations. The plaintiff contends that this affidavit created a genuine dispute of material fact as to the existence of a breach and, consequently, that the grant of summary judgment was improper.

However, as discussed *supra*, a plaintiff must show that a defendant owed her a duty before evidence of a breach of duty can be considered. "[T]o survive summary judgment, a plaintiff must show that he or she is owed a legal duty by the defendant before the three other elements of his or her negligence claim will be

- 19 -

considered." *Flynn v. Nickerson Community Center*, 177 A.3d 468, 476 (R.I. 2018). "Where there is no duty, a factfinder will have 'nothing to consider and a motion for summary judgment must be granted.'" *Id.* (quoting *Phelps v. Hebert*, 93 A.3d 942, 946 (R.I. 2014)).

Accordingly, because here the plaintiff has not shown the existence of a duty owed to her by National Grid through any of her alternative theories, summary judgment was not only proper, it was necessary, as evidence of a breach cannot be considered without first establishing a duty. *Flynn*, 177 A.3d at 476. Therefore, the hearing justice's grant of summary judgment was not in error, and we need not consider any evidence of breach, including the statements set forth in the expert affidavit proffered by the plaintiff.

## IV

### Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court. The record shall be returned to the Superior Court.


Justice Long did not participate.



# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE
Licht Judicial Complex
250 Benefit Street
Providence, RI 02903

**OPINION COVER SHEET**

| | |
|---|---|
| **Title of Case** | Flavia Linnea Borgo v. The Narragansett Electric Company d/b/a National Grid et al. |
| **Case Number** | No. 2021-21-Appeal. (PC 16-2407) |
| **Date Opinion Filed** | June 6, 2022 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, and Lynch Prata, JJ. |
| **Written By** | Chief Justice Paul A. Suttell |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Netti C. Vogel |
| **Attorney(s) on Appeal** | For Plaintiff: <br><br> Matthew D. Provencher, Esq. <br> For Defendant: <br><br> Mark P. Dolan, Esq. |